# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**MONTELL WILLIAMS,**
 Plaintiff–Appellant,

v.

**LLOYD ARNOLD,**
 Defendant–Appellee.

**Appeal No. 26-1014**
 (From N.D. Indiana Case No. 2:25-cv-00108-GSL-APR)

U.S.C.A. – 7th Circuit
R E C E I V E D
JAN 09 2026

# EMERGENCY MOTION FOR STAY PENDING APPEAL

(Fed. R. App. P. 8(a)(2))

Plaintiff–Appellant Montell Williams, proceeding pro se, respectfully moves this Court for an **Emergency Stay Pending Appeal** of the district court's December 15, 2025 Opinion and Order. Immediate relief is required to prevent irreparable harm—including arrest, prosecution, and continued public dissemination of allegedly unlawful registration information—while this Court reviews serious jurisdictional and statutory defects in the judgment below. (Ex. A ¶¶ 4–7).

# I. BASIS FOR APPELLATE JURISDICTION AND EMERGENCY RELIEF

This motion is properly brought under Federal Rule of Appellate Procedure 8(a)(2).

Appellant first complied with Rule 8(a)(1) by seeking a stay in the district court, filing an Emergency Motion for Stay Pending Appeal on January 5, 2026. Despite the urgency of the circumstances and the irreparable consequences at issue, the district court has not ruled on that motion. . *(Ex. A ¶ 7)*.

In the meantime, enforcement of the challenged order is imminent. The county sheriff has expressly threatened arrest should Appellant fail to comply with the registration directive by next week, placing Appellant at immediate risk of loss of liberty before this Court can review the serious jurisdictional and constitutional errors presented on appeal. *(Ex. A ¶ 5)*. Compounding that harm, Appellant's name, photograph, and personal identifying information are currently published on Indiana's Sex Offender Registry and marked as "non-compliant," subjecting Appellant to ongoing reputational injury, public stigma, and heightened law-enforcement scrutiny that cannot be undone through later relief. (Ex. A ¶¶ 4–6).

Given the district court's inaction, the immediacy of threatened arrest, and the continuing public dissemination of Appellant's information, the need for appellate intervention is manifest. Absent a stay from this Court, Appellant will suffer irreparable harm to liberty, reputation, and due process interests before the merits of the appeal can be adjudicated. (Ex. A ¶¶ 5–7). Under these circumstances, relief from this Court is not merely appropriate—it is essential to preserve the status quo and protect Appellant's fundamental rights pending appeal.

## II. FACTUAL BACKGROUND

The irreparable harm to Appellant is neither speculative nor prospective; it is already occurring and continues to compound daily. On December 15, 2025, the district court entered an order compelling compliance with the Sex Offender Registration and Notification Act ("SORNA"), thereby for the first time imposing an immediate obligation backed by severe criminal penalties. (Ex. A ¶ 2). Within three days of that order—on December 18, 2025—the State of Indiana published Appellant's name, photograph, and personal identifying information on the Indiana Sex Offender Registry and designated Appellant as "non-compliant." That publication, which had never occurred at any point during the pendency of this civil litigation, instantly subjected Appellant to public stigma, reputational injury, and heightened law-enforcement scrutiny. Courts have long recognized that once such information is disseminated, the resulting harms are irreparable because they cannot be undone through later judicial relief, even if the appellant ultimately prevails. See *Nken v. Holder*, 556 U.S. 418, 434–35 (2009); *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers).

The December 18, 2025 registry publication also triggered an immediate and concrete risk of loss of liberty. Following the posting, Appellant received a direct telephone call from Sergeant Hinch of the Lake County Sheriff's Department, who advised Appellant that he was deemed non-compliant and would be subject to arrest if he did not register. This individualized communication from a law-enforcement officer charged with enforcement authority confirms that enforcement is imminent and that Appellant faces a concrete and immediate risk of incarceration.

3.

Appellant now also faces imminent exposure to prosecution under 18 U.S.C. § 2250.

The Supreme Court has made clear that the prospect of criminal prosecution and incarceration constitutes one of the most serious forms of irreparable harm warranting a stay. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). These harms were entirely absent before the district court's ruling and arose solely because of the December 15 order and its immediate enforcement.

The necessity of appellate intervention is further underscored by the district court's failure to rule on Appellant's emergency motion for a stay while enforcement has accelerated. Despite the rapid publication of Appellant's registry information on December 18, 2025, and the subsequent direct threat of arrest communicated by the Lake County Sheriff's Department, the district court has taken no action to preserve the status quo pending appeal. As a result, Appellant remains exposed to arrest and felony prosecution before this Court can review the substantial jurisdictional and statutory errors raised on appeal. The very purpose of a stay pending appeal is to prevent precisely this scenario—where irreversible liberty and reputational harms occur before appellate review can be meaningfully exercised. *Nken*, 556 U.S. at 427.

Absent immediate relief from this Court, Appellant will continue to suffer ongoing and irreparable injury, including public branding as a non-compliant registrant and the imminent threat of incarceration, rendering any eventual appellate victory hollow. Under these circumstances, a stay is essential to preserve the status quo and to safeguard Appellant's fundamental liberty interests while this appeal is adjudicated.

4.

## III. LEGAL STANDARD

A stay pending appeal is warranted when the movant satisfies the well-established four-factor standard governing interim appellate relief. The Supreme Court has made clear that a court considering a stay must evaluate "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). These factors are not applied in isolation but are balanced together, with particular attention to the first two, which the Court has described as "the most critical." *Id.* at 434.

When, as here, an appeal presents serious questions concerning the lower court's jurisdiction or statutory authority, the likelihood-of-success inquiry is satisfied at least where the appellant has raised "substantial" or "serious" legal questions that are a fair ground for litigation. See *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–44 (D.C. Cir. 1977) (explaining that a stay may issue where the movant shows a substantial case on the merits coupled with a strong showing of irreparable harm). Courts have long recognized that where the challenged order may exceed the court's lawful authority, preserving the status quo pending appellate review is especially important to ensure that appellate jurisdiction is not rendered meaningless. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (emphasizing that courts must assure themselves of jurisdiction before exercising coercive power).

The irreparable-harm factor likewise weighs heavily in favor of a stay where, absent relief, the movant faces loss of liberty, exposure to criminal penalties, or other harms that cannot be remedied through later reversal. The Supreme Court has repeatedly held that such injuries are paradigmatic examples of irreparable harm justifying interim relief. *Nken*, 556 U.S. at 434–35; *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). By contrast, maintaining the status quo during the pendency of an appeal generally imposes little or no cognizable harm on the government, particularly where enforcement was not occurring prior to the challenged order. See *Hilton*, 481 U.S. at 776.

Finally, both the balance of equities and the public interest favor a stay where it ensures orderly judicial review and prevents potentially unlawful exercises of governmental power before appellate scrutiny can occur. The public has a strong interest in ensuring that courts act within the bounds of their jurisdiction and that individuals are not subjected to criminal sanctions based on orders later determined to be unlawful. See *Nken*, 556 U.S. at 436 ("There is always a public interest in prompt execution of removal orders," but that interest must yield where a stay is necessary to preserve meaningful appellate review). Accordingly, where an appeal raises substantial jurisdictional or statutory questions regarding the lower court's authority to act, a stay pending appeal is not merely appropriate—it is essential to preserve the status quo and protect the integrity of the appellate process.

6.

# IV. ARGUMENT

## A. Appellant Is Likely to Succeed on the Merits

Appellant has made a strong—indeed compelling—showing that he is likely to succeed on the merits because the district court's order rests on multiple, independent jurisdictional and constitutional defects. These errors are not merely technical; they go to the core limits of federal judicial power. Each defect independently warrants vacatur. Taken together, they demonstrate that the judgment is void and that preserving the status quo pending appeal is essential.

## 1. The District Court Lacked Constitutional and Statutory Authority to Act

Federal courts possess no inherent authority to impose legal obligations or create enforcement regimes. Their power "is derived wholly from the Constitution and statutes of the United States." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869). When a court acts outside those limits, its judgment is void and must be vacated on appeal.

Here, the district court exercised coercive power in the absence of both Article III jurisdiction and any valid statutory authorization. As explained below, no live case or controversy existed before the court acted, sovereign immunity independently barred relief, and the court impermissibly revisited and contradicted a final federal criminal judgment resolving the precise federal issue at stake.

7.

## 2. No Case or Controversy Existed Before the District Court Acted

Article III confines federal courts to adjudicating concrete disputes involving an actual injury that exists at the time jurisdiction is invoked. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Courts may not act where alleged injuries are hypothetical, speculative, or contingent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Here, no enforcement dispute existed at any point during the pendency of this civil declaratory-judgment action. Appellant was not required to register, was not threatened with arrest or prosecution, and was not listed on any sex-offender registry. That absence of enforcement was not discretionary; it reflected the absence of any operative legal predicate authorizing registration.

Critically, the State itself confirmed this jurisdictional reality in the **Notice of Removal**. Defendant Lloyd expressly asserted that "Plaintiff's registration obligations as a sex offender stem from, and [are] predicated on the interpretation of SORNA." That statement is a binding jurisdictional admission that the sole issue in this case is the interpretation and applicability of federal law—SORNA—and that no independent state-law enforcement obligation existed apart from that federal question.

The alleged injury arose only after—and solely because—the district court imposed a new obligation compelling SORNA compliance.

8.

That sequence is constitutionally fatal. A federal court "cannot manufacture standing by inflicting harm on a party and then adjudicating the legality of its own action." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). When a court creates the very injury that supplies jurisdiction, it issues an advisory opinion forbidden by Article III. *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

Because no live controversy existed before the court acted, the judgment exceeds constitutional authority and must be vacated.

## 3. The District Court Impermissibly Re-Litigated a Federal Issue Already Finally Decided

Lloyd's Notice of Removal does more than establish federal jurisdiction; it confirms that the **core and dispositive issue** in this civil case is identical to the issue resolved in Appellant's prior federal criminal proceeding—namely, whether SORNA applies to Appellant.

In the criminal case, the sentencing court entered a final judgment expressly striking "the condition of supervision related to compliance with the requirements of SORNA." That ruling was a final determination by a court of competent jurisdiction interpreting federal law.

Under well-settled principles of collateral estoppel, that determination is binding in subsequent litigation involving the same issue. See *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

All elements of issue preclusion are satisfied:

1. **Identity of Issue**: Lloyd's own jurisdictional theory confirms that both cases turn on the interpretation and applicability of SORNA.

2. **Actual Litigation and Final Determination**: The sentencing court expressly decided that SORNA compliance would not apply.

3. **Essential to the Judgment**: The removal of the SORNA condition was a substantive modification of the sentence.

4. **Full and Fair Opportunity**: The United States litigated and obtained a final judgment in the criminal case.

A subsequent district judge may not revisit or contradict that final determination. See *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995). The civil order compelling SORNA compliance is therefore an impermissible collateral attack on a final federal judgment and is void.

## 4. Sovereign Immunity Independently Deprived the Court of Power to Issue Relief

Even if a case or controversy had existed, the Eleventh Amendment independently barred the relief ordered. Federal courts lack jurisdiction to issue coercive relief against a state or state official acting in an official capacity absent waiver or a valid *Ex parte Young* exception. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996).

The *Ex parte Young* exception is narrow and jurisdictional. It applies only where the named defendant has a specific, non-attenuated connection to enforcement of the challenged law. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39–40 (2021). A generalized supervisory role or abstract responsibility for state policy is insufficient. *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (7th Cir. 2019).

Here, the named defendant—the Commissioner of the Indiana Department of Correction—has no authority under Indiana law to enforce sex-offender registration requirements. Enforcement authority lies exclusively with local sheriffs. Because the defendant cannot arrest, prosecute, or otherwise compel compliance, there is no enforcement nexus sufficient to invoke *Ex parte Young*. The district court therefore lacked jurisdiction to issue any coercive order against this defendant, and its judgment is barred by sovereign immunity.

## 5. The Court Converted a Civil Action Into a Criminal Enforcement Mechanism

This case was a civil declaratory-judgment action. Yet the district court did not merely declare legal rights; it imposed a mandatory federal registration obligation backed by felony penalties. In doing so, the court transformed a civil case into a de facto criminal enforcement mechanism—without indictment, statutory authorization, or criminal jurisdiction.

Federal courts may not impose criminal consequences through civil judgments. See *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812) (federal courts have no common-law criminal jurisdiction). Nor may they expand civil jurisdiction to create new criminal exposure. *Morrison v. Olson*, 487 U.S. 654, 689 n.28 (1988).

11.

The jurisdictional defect is heightened by the fact that the district court's order directly contradicts a prior federal criminal judgment in which the sentencing court expressly removed SORNA compliance as a condition of supervised release. A civil court lacks authority to override or nullify a final criminal judgment entered by a coordinate federal court. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995). The resulting conflict produces incompatible federal commands—an outcome the Constitution does not permit.

# V. RELIEF REQUESTED

For the reasons set forth above, Appellant respectfully requests that this Court exercise its authority under Federal Rule of Appellate Procedure 8(a)(2) and its inherent equitable powers to preserve the status quo and protect meaningful appellate review. Specifically, Appellant asks this Court to enter an order staying enforcement of the district court's December 15, 2025 Opinion and Order in its entirety pending resolution of this appeal. The Supreme Court has long recognized that a stay is an appropriate and often necessary mechanism to prevent irreparable injury and to ensure that appellate review is not rendered illusory. *Nken v. Holder*, 556 U.S. 418, 427 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Appellant further requests that the Court prohibit any arrest, prosecution, or other enforcement actions predicated on the challenged registration obligation while this appeal is pending. Absent such relief, Appellant faces immediate exposure to criminal sanctions that cannot be undone through later reversal, thereby defeating the purpose of appellate review.

12.

Courts routinely grant such protective relief where enforcement would impose irreversible liberty consequences before the legality of the underlying order can be adjudicated. See *Nken*, 556 U.S. at 434–35; *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

In addition, Appellant seeks an order directing the suspension or removal of Appellant's designation as "non-compliant" on the Indiana Sex Offender Registry for the duration of the appeal. Public dissemination of registry information inflicts ongoing reputational and constitutional harm that cannot be remedied after the fact and serves no legitimate purpose where the validity of the registration obligation itself is the central issue on appeal.

Preserving the status quo requires restoring the pre-judgment condition under which no registry publication or enforcement occurred. See *Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers).

Finally, Appellant requests such other and further relief as this Court deems just and proper to preserve its appellate jurisdiction and to prevent irreparable harm pending resolution of the appeal. Where, as here, serious jurisdictional and constitutional questions are presented, interim relief is essential to ensure that this Court's ultimate review is meaningful and that Appellant is not subjected to potentially unlawful coercive measures before that review can occur. See *Nken*, 556 U.S. at 427.

13.

Respectfully submitted,

Date: January 9th, 2026

**Montell Williams**
Plaintiff–Appellant, pro se
6626 Nebraska Ave. Apt. 2A
Hammond, Indiana 46323
Phone: 219-214-1619

---

## CERTIFICATE OF SERVICE

I certify that on January 9th, 2026, a copy of this Emergency Motion for Stay Pending Appeal was served on all counsel of record via the Court's CM/ECF system. I also certify that on January 9th, 2026, the foregoing was mailed via the The United Postal Service, first-class postage prepaid return receipt requested to attorney on record.

Montell Williams

U.S.C.A. – 7th Circuit
RECEIVED
JAN 09 2026

EX. A

## DECLARATION OF MONTELL WILLIAMS

IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

I, Montell Williams, declare as follows:

1. I am the Appellant in this matter. I have personal knowledge of the facts set forth in this declaration, and if called to testify, I could and would do so competently.

2. On December 15, 2025, the United States District Court entered an order directing me to comply with the Sex Offender Registration and Notification Act ("SORNA").

3. Prior to the entry of that order, no sex-offender registration requirement was being enforced against me, no law-enforcement agency had threatened me with arrest or prosecution for failure to register, and my name, photograph, or personal information had not been published on any sex-offender registry during the pendency of this civil case.

4. On December 18, 2025, the State of Indiana published my name, photograph, and personal identifying information on the Indiana Sex Offender Registry and designated me as "non-compliant."

5. Following that publication, I received a direct telephone call from Sergeant Hinch of the Lake County Sheriff's Department. During that call, Sergeant Hinch informed me that I was considered non-compliant with registration requirements and advised me that I would be subject to arrest if I did not register.

6. As of the date of this declaration, I remain listed on the Indiana Sex Offender Registry as "non-compliant," and I continue to face the threat of arrest and potential prosecution if I do not comply with the registration directive.

7. I have filed an emergency motion for a stay pending appeal in the district court. The district court has not ruled on that motion, and I remain exposed to arrest and criminal prosecution while appellate review is pending.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9th, 2026,
at _Hammond , IN_____.


Montell Williams

_____

Declarant

2.

USDC IN/ND case 2:25-cv-00108-GSL-APR    document 31    filed 01/05/26    page 1 of 5

**-FILED-**

JAN 0 5 2026

At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

**MONTELL WILLIAMS,**

Plaintiff–Appellant,

v.

**LLOYD ARNOLD,**

Defendant–Appellee.

**Case No. 2:25-cv-00108-GSL-APR**

U.S.C.A. – 7th Circuit
R E C E I V E D
JAN 0 9 2026

# EMERGENCY MOTION FOR STAY PENDING APPEAL

Plaintiff–Appellant Montell Williams, proceeding *pro se*, respectfully moves this Court for an Emergency Stay Pending Appeal of the Court's December 15, 2025 Opinion and Order, pending review by the United States Court of Appeals for the Seventh Circuit. In support, Appellant states as follows:

## I. BACKGROUND

This civil action originated as a state-court declaratory judgment proceeding and was subsequently removed to federal court. At the time of filing, no state or federal authority had an operative order or enforcement action requiring Appellant to register as a sex offender.

Crucially, in a prior, separate proceeding (Cause No. 2:12-cr-144), a federal district court judge had already granted Appellant's motion and removed the condition that he comply with SORNA's registration requirements as part of his supervised release.

1.

While the present civil matter was pending, the status quo remained: Appellant was not subject to prosecution, no enforcement action was initiated, and no publication of Appellant's information occurred. An informal text communication received three days before judgment confirmed that any potential registration official's belief was expressly "pending litigation" and that information would not be published because the matter was "unresolved."

Despite the absence of any enforced obligation or imminent enforcement action, the district court, on December 15, 2025, granted Defendant's Rule 12(c) motion and ordered Appellant to comply with SORNA, thereby imposing an immediate obligation carrying severe criminal consequences.

Appellant has timely filed a Notice of Appeal challenging the district court's Article III jurisdiction, Eleventh Amendment authority, and power to enter the challenged order.

## II. LEGAL STANDARD

A stay pending appeal is an exercise of judicial discretion designed to preserve the status quo while an appellate court reviews the legality of the challenged order. The Supreme Court explained that a stay is warranted where the movant demonstrates (1) a likelihood of success on the merits, (2) irreparable injury absent a stay, (3) that the balance of equities tips in the movant's favor, and (4) that a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

Where an appeal presents serious threshold questions concerning constitutional jurisdiction and the court's authority to act at all, courts routinely grant a stay. In such circumstances, maintaining the status quo is necessary to protect the integrity of appellate review and prevent the enforcement of an order that may ultimately be declared void *ab initio*.

## III. ARGUMENT

A. Appellant Has a Strong Likelihood of Success on Threshold Jurisdictional Grounds

Article III of the Constitution limits federal courts to actual, ongoing cases or controversies. At no point—at filing, during litigation, or at judgment—did a live controversy exist.

The voluntary-cessation doctrine, which sometimes preserves jurisdiction, does not apply here because it requires a defendant to have affirmatively halted *ongoing* enforcement.

See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). In this case, there was no enforcement to cease.

The only communication from state officials confirmed the matter was "unresolved" and "pending litigation." This asserted risk was speculative and contingent on the district court's own ruling. Because the alleged injury "exists only if the court acts first," the controversy was hypothetical, not moot. The district court did not merely prevent the resumption of prior conduct; instead, it created the obligation it purported to adjudicate, issuing an impermissible advisory opinion. Article III jurisdiction was lacking at the time judgment was entered.


**2. The Court Lacked Jurisdiction Under the Eleventh Amendment and *Ex parte Young***

The district court lacked subject matter jurisdiction under the Eleventh Amendment. Appellant's alleged injury is not redressable by an order against this specific defendant. The Commissioner of the IDOC (Lloyd Arnold) has no actual authority under Indiana law to enforce the federal SORNA requirements against an individual not under IDOC custody or supervision; the local county sheriff holds that authority.

The *Ex parte Young* exception does not apply where the state official has no enforcement connection to the challenged federal statute. An order against Commissioner Arnold cannot effectively stop the local sheriff from initiating action. The State of Indiana is the real, substantial party in interest, and the district court was barred by sovereign immunity from adjudicating this dispute or issuing the compliance order against this defendant.

3.

### 3. The Court Exceeded Its Civil Authority and Contradicted a Prior Ruling

This action was a civil declaratory judgment proceeding. The order imposed an affirmative federal registration obligation enforceable by criminal penalties, despite the absence of statutory authorization or proper civil jurisdiction.

Furthermore, this order conflicts with a previous federal court ruling in Appellant's underlying criminal case (2:12-cr-144) that explicitly removed the SORNA compliance condition. The current order bypasses the procedural requirements for imposing criminal-law obligations and creates contradictory federal judgments.

### B. Appellant Will Suffer Irreparable Harm Absent a Stay

Absent a stay, Appellant faces immediate and irreparable harm. The Order imposes a mandatory obligation carrying severe criminal penalties (up to 10 years imprisonment for non-compliance under 18 U.S.C. § 2250). The immediate exposure to criminal liability, arrest, prosecution, and incarceration implicates fundamental liberty interests that cannot be undone through post-appeal relief. Compelled compliance with a potentially unlawful criminal regime constitutes a recognized irreparable injury.

### C. The Balance of Equities and Public Interest Favor a Stay

The equities weigh decisively in Appellant's favor. Appellant faces immediate, severe consequences from enforcement of an order subject to serious jurisdictional and constitutional doubt. The public interest is best served by ensuring federal courts operate within constitutional limits and by preserving the integrity of the appellate process. A stay preserves orderly review and prevents the premature enforcement of a potentially void judgment.

## IV. RELIEF REQUESTED

For the foregoing reasons, Appellant respectfully requests that the Court stay enforcement of the December 15, 2025 Opinion and Order pending appeal, preserve the status quo until jurisdictional review by the United States Court of Appeals for the Seventh Circuit is complete, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
Date: January 5, 2026
Montell Williams
Plaintiff–Appellant, *pro se*
6626 Nebraska Ave., Apt. 2A
Hammond, Indiana 46323
Phone: 219-214-1619

---

## CERTIFICATE OF SERVICE

I certify that on January 5, 2026, a copy of this Emergency Motion for Stay Pending Appeal was served on all counsel of record by regular mail, postage prepaid, addressed to their last known addresses of record.

Montell Williams

*Montell Williams* "PRO SE"

5.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

U.S.C.A. – 7th Circuit
RECEIVED
JAN 09 2026

MONTEL WILLIAMS,               )
                              )
        Plaintiff,             )
                              )
    v.                         )        Case No.
                              )
LLOYD ARNOLD, in his official capacity )
as Commissioner of the Indiana )
Department of Correction,      )
                              )
        Defendant.             )

### Notice of Removal

Defendant, Lloyd Arnold in his official capacity as Commissioner of the Indiana Department of Correction, by counsel, Thomas Pratt, Deputy Attorney General, pursuant to 28 U.S.C. §§ 1441 and 1446, respectfully notifies the Court of the removal of this action from the Lake Superior Court to the United States District Court for the Northern District of Indiana, Hammond Division. In support, the Defendant states as follows:

1.      Plaintiff filed his complaint in the Lake Superior Court on February 6, 2025, under cause no. 45D10-2502-MI-000059.

2.      The complaint alleges that Plaintiff is entitled to a declaratory judgment under Ind. Code § 34-14-1-1 based on an interpretation of federal law.

3.      The notice of removal is timely, having been filed within 30 days of service of the complaint and summons, in accordance with 28 U.S.C. § 1446(b).

4.      In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants properly joined and served consent to removal of this action, as the Lloyd Arnold is the only defendant.

5.      Filed simultaneously with this notice of removal are all pleadings and processes

of the Lake Superior Court that have been served upon the defendant in this action. A copy of the

Lake Superior Court's electronic chronological case summary is also being filed simultaneously.

(Exhibit A: Chronological Case Summary in Cause No. 45D10-2502-MI-000059 and Pleadings,

and Processes).

6.      Plaintiff brings this action seeking a declaratory judgment. This Court is

authorized to enter declaratory judgments pursuant to 28 U.S.C. § 2201.

7.      According to the complaint, Plaintiff pleaded guilty to transporting an individual

in interstate commerce with intent to engage in prostitution, in violation of 18 U.S.C. § 2421

("transporting/prostitution"), in the United States District Court for the Northern District of

Indiana, under case no. 2:12-cr-00144. (Compl. at ¶ 3.) Transporting/prostitution is a "sex

offense" under the Sex Offender Registration and Notification Act ("SORNA"). *See* 34 U.S.C. §

20911(5)(A)(iii).

8.      Plaintiff seeks an order declaring that he does not have an obligation to register as

a sex offender on the Indiana Sex and Violent Offender Registry ("SVOR") because his offense

of transporting/prostitution is not a "sex offense" within the meaning of 34 U.S.C. §

20911(5)(C). Plaintiff alleges that, because his offense is not a registerable sex offense, the

SORNA does not require that he register as a sex offender in Indiana. *See id.* at § 20913(a)

(requiring sex offenders to "keep the[ir] registration current" in each jurisdiction in which they

reside, work, or are a student, as well as the jurisdiction in which they were convicted).

9.      This case may be removed because this action falls within the original

jurisdiction of this Court, as Plaintiff's registration obligation as a sex offender stems from, and is

predicated on the interpretation of, SORNA—a claim arising under the Constitution, treaties, or

- 2 -

laws of the United States. *See* 28 U.S.C. §§ 1331, 1441(a). *Cf. Grable & Sons Metal Prods.*, Inc.

v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (finding federal question jurisdiction where "a

state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which

a federal forum may entertain without disturbing any congressionally approved balance of

federal and state judicial responsibilities.").

   10.    Venue is proper in this Court, because the United States District Court for the

Northern District of Indiana is the district for the geographical area encompassing Lake County,

Indiana, where the state court actions was filed. *See* 28 U.S.C. § 1441(a).

   11.    A copy of this Notice will be served upon all other parties and filed with the Lake

Superior Court upon receipt of a file stamped copy pursuant to 28 U.S.C. § 1446(d).

   WHEREFORE, the Defendant respectfully submits this notice of removal from the Lake

Superior Court to the United States District Court for the Northern District of Indiana, Hammond

Division, and pray this Honorable Court exercise jurisdiction over this case, and that the action

be removed to this Court and Division.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL
Attorney No. 18857-49

Date:   March 5, 2025         By:      */s/ Thomas S. Pratt*
                                       Thomas S. Pratt
                                       Deputy Attorney General
                                       Attorney No. 36933-18
                                       OFFICE OF ATTORNEY GENERAL TODD ROKITA
                                       Indiana Government Center South, 5th Floor
                                       302 West Washington Street
                                       Indianapolis, IN 46204-2770
                                       Phone: (317) 232-0493
                                       Fax: (317) 232-7979
                                       Email: Thomas.Pratt@atg.in.gov

**Certificate of Service**

I hereby certify that on March 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also certify that on March 5, 2025, the foregoing was mailed via the United States Postal Service, first-class postage prepaid return receipt requested to the following:

> Russell W. Brown, Jr.
> 9223 Broadway, Suite E
> Merrillville, Indiana 46410

Date: March 5, 2025

/s/ *Thomas Pratt*

Thomas S. Pratt
Deputy Attorney General

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

U.S.C.A. – 7th Circuit
R E C E I V E D
JAN 0 9 2026

MONTELL WILLIAMS,

    Plaintiff,

    v.

LLOYD ARNOLD,

    Defendant.

Case No. 2:25-CV-108-GSL-APR

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 14]. The Motion has been fully briefed [DE 15, 21–22], oral argument was heard on October 1, 2025 [DE 24], and the Motion is now ripe for ruling. In addition, Plaintiff requested in both his response brief [DE 21] and at the oral hearing [DE 24] that Defendant's Motion be converted into a motion for summary judgment. For the reasons below, the Court **DENIES** Plaintiff's request to convert the Motion into one for summary judgment [DE 21, 24] and **GRANTS** Defendant's Motion [DE 14].

## BACKGROUND

### Factual Background

In January 2013, under Cause No. 2:12-cr-144, Plaintiff Montell Williams pled guilty to Count 3 of the superseding indictment for transporting an individual in interstate commerce with intent that such individual engage in prostitution, a violation of 18 U.S.C. § 2421. [DE 4, ¶ 3; DE 4-1 at 3, ¶ 7a]. Plaintiff was initially sentenced to a 120-month term of imprisonment with eight years of supervised release upon his release from custody. [DE 4, ¶ 5; DE 4-1 at 9–10]. Following an appeal to and subsequent remand from the Seventh Circuit, in which Plaintiff

challenged two conditions of his supervised release [DE 4-1 at 15], Plaintiff was resentenced to a 120-month term of imprisonment and a lifetime term of supervised release. [DE 4, ¶¶ 5–6; DE 4-1 at 17–18]. As a mandatory condition of his supervised release, Plaintiff was ordered to comply with the Sex Offender Registration and Notification Act (SORNA).[1] [DE 4, ¶ 7; DE 4-1 at 18].

Following Plaintiff's release from custody in 2020, Plaintiff was required to register as a sex offender in Indiana. [DE 4, ¶¶ 8–9]. In 2022, Plaintiff moved to modify the conditions of his supervised release.[2] [DE 4, ¶10; DE 14-5]. Although Plaintiff initially based his argument on the premise that SORNA did not apply to him, he later clarified that he did not seek a determination on SORNA's applicability and instead sought only to strike the condition that he comply with SORNA. [DE 4-1 at 29]. In 2024, the district court granted Plaintiff's motion and removed the condition that Plaintiff comply with SORNA's registration requirements. [*Id.* at 33–34].

*Procedural Background*

Following the district court's removal of the SORNA compliance condition, Plaintiff thereafter filed a declaratory judgment action against Defendant Lloyd Arnold in state court under Cause No. 45D10-2502-MI-59. [DE 1, DE 4 at 4]. Plaintiff specifically sought a declaration that he is not a sex offender, that he does not have an obligation to register as a sex offender in Indiana, and that he should be removed from the Department of Corrections' Sex

---

[1] The mandatory condition that Plaintiff register as a sex offender was initially agreed upon in Plaintiff's plea agreement. [*See* DE 4-1 at 4, ¶ 7(d)(iv) ("The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. § 16913.")]. This condition was then imposed as part of Plaintiff's initial eight-year term of supervised release, although it was not specified whether the condition was mandatory or discretionary. [*See id.* at 10 ("The defendant shall comply with the requirements of [SORNA] (42 U.S.C. § 16901, *et seq.*) . . . .")]. Following the remand from the Seventh Circuit [*id.* at 15], the sex offender registration requirement was reimposed as a mandatory condition of Plaintiff's revised lifetime term of supervised release. [*See id.* at 18, ¶ 3].

[2] Along with seeking a modification of the conditions of his supervised release, Plaintiff also sought to modify the duration of his supervised release. [DE 14-5]. The district court denied this portion of Plaintiff's motion. [*See* DE 4-1 at 33]. Plaintiff has raised no further challenges to the duration of his supervised release under this action.

Offender Registry. [DE 4 at 4]. The case was subsequently removed from the Lake County

Superior Court to this Court. [DE 1]. After answering Plaintiff's Complaint [DE 12], Defendant

filed his Motion for Judgment on the Pleadings [DE 14]. Oral argument on Defendant's Motion

was held on October 1, 2025. [DE 24]. The Motion has been fully briefed and is now ripe for

ruling. [DE 15, 21–22]. Plaintiff has also requested that Defendant's Motion be converted into a

motion for summary judgment. [DE 21, 24]. The Court will address both Plaintiff's request and

Defendant's Motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." *Federated Mut.*

*Ins. v. Coyle Mech. Supply Co.*, 983 F.3d 307, 312 (7th Cir. 2020) (quoting Fed. R. Civ. P.

12(c)). Rule 12(c) motions may be raised by either party "to dispose of the case on the basis of

the underlying substantive merits." *Wolf v. Riverport Ins.*, 132 F.4th 515, 518 (7th Cir. 2025).

When a Rule 12(c) motion is filed to challenge the sufficiency of a complaint—as Defendant did

here—the motion performs the same function as a Rule 12(b)(6) motion to dismiss and is thus

governed by the same standard. *Id.* The only difference between the two is timing. *See Coyle*,

983 F.3d at 313; 5C Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed. 2019) (providing

that a party "cannot move under Rule 12(c) until after an answer has been filed").

"When a plaintiff moves for judgment on the pleadings, the motion should not be granted

unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its

position, and that the plaintiff is entitled to relief." *Coyle*, 983 F.3d at 313 (quoting *Scottsdale*

*Ins. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). In essence, this means that

the movant must demonstrate not only the absence of any material issues of fact to be resolved,

*see id.*, but also that the plaintiff's complaint fails to meet the plausibility standard—i.e., that the plaintiff has not stated a recognizable legal claim. *See Wolf*, 132 F.4th at 519. As with a motion to dismiss under Rule 12(b)(6), well-pled factual allegations in the complaint are accepted as true and the Court will view all facts and inferences in the light most favorable to the non-moving party. *Id.*; *Coyle*, 983 F.3d at 313 (citing *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993)).

## DISCUSSION

### I.    Plaintiff's Conversion Request [DE 21, 24]

Before proceeding to the merits of Defendant's 12(c) Motion, the Court must first address Plaintiff's request to convert the motion into one for summary judgment under Rule 56. [*See* DE 21 at 1, DE 24]. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

*Coyle*, 983 F.3d at 313 (quoting Fed. R. Civ. P. 12(d)). A district court has discretion over whether a Rule 12(c) motion should be converted into a Rule 56 motion for summary judgment. *Id.* If the court chooses to consider materials outside the pleadings, however, then "the discretion ends, and the court 'must' treat the motion as one for summary judgment." *Id.* (citing Fed. R. Civ. P. 12(d) and *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002)).

Generally, "pleadings" for purposes of a Rule 12(c) motion "include the complaint, the answer, and any written instruments attached as exhibits." *Id.* at 312 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Yet an exception to this rule exists in which a court may also "take into consideration documents incorporated by reference to the pleadings," as well as "take judicial notice of matters of public record."

4

*Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2025) (explaining that courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment under Rule 12(d)"). A court may take judicial notice of an adjudicative fact "that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)).

Here, Defendant attached six exhibits to his 12(c) Motion, each deriving from Plaintiff's underlying criminal matter in Cause No. 2:12-cr-144. [*See* DE 14-1 (Superseding Indictment), 14-2 (Plea Agreement), 14-3 (Judgment in a Criminal Case), 14-4 (Judgment in a Criminal Case), 14-5 (Motion to Modify Conditions of Supervised Released), and 14-6 (Opinion and Order)]. Defendant requests that each of these exhibits be judicially noticed as matters of public record whose accuracy cannot be reasonably questioned. [*See* DE 14 at 2 n.1 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); DE 22 at 2–3]. First, four of the six exhibits (Plea Agreement, 2012 Judgment in a Criminal Case, 2016 Judgment in a Criminal Case, and Opinion and Order) are the same as those attached to Plaintiff's Complaint. [*See generally* DE 4-1]. Second, each of these exhibits appear to be central to the Complaint and the allegations contained within it. Finally, each of these exhibits are matters of public record. Thus, it seems permissible for the Court to take judicial notice of and or consider them as part of the

pleadings for the Rule 12(c) analysis. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (explaining that for purposes of a Rule 12(b)(6) or 12(c) motion, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

Plaintiff does not appear to contest that these exhibits are public records, nor does Plaintiff offer any argument suggesting their accuracy is in dispute. [*See* DE 21 at 1]. Rather, Plaintiff appears to imply—as a rule of thumb—that Defendant's decision to attach *any* exhibits automatically dictates the need to convert the motion into one for summary judgment. [*Id.*]. This is not the case though. *See Flynn*, 863 F.3d at 640. Defendant's exhibits cleanly fit the criteria for judicial notice under Federal Rule of Evidence 201: they are publicly available, they are not factually disputed, and they derive from sources whose accuracy cannot reasonably be questioned. *See Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2022); *Henson*, 29 F.3d at 284 (affirming district court's consideration of public court documents from earlier state case in deciding defendants' motion to dismiss). Thus, the Court takes judicial notice of Defendant's attached exhibits. [*See* DE 14-1 through 14-6].

Accordingly, because none of Defendant's exhibits are "matters outside the pleadings," *see* Fed. R. Civ. P. 12(d), the Court declines to convert Defendant's Rule 12(c) Motion into one for summary judgment.

## II.    Defendant's Rule 12(c) Motion [DE 14]

Turning to the merits of Defendant's 12(c) Motion, Defendant asserts that Plaintiff is not entitled to the relief he seeks based on SORNA's statutory language. Plaintiff's Complaint, and

thus Defendant's Motion, both concern the applicability of the sex offender registry requirements within SORNA.

In 2006, Congress enacted SORNA to make "more uniform and effective" the "patchwork" of previously implemented state sex-offender registration systems. *Gundy v. United States*, 588 U.S. 128, 132 (2019); *see* 34 U.S.C. § 20901 *et seq.* (formerly codified as 42 U.S.C. § 16901 *et seq.*). The express purpose of SORNA is "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for [their] registration." *Id.* at 133 (quoting § 20901). SORNA defines a "sex offender" as "an individual who was convicted of" certain specified crimes, in particular, any offense "involving a sexual act or sexual contact" as well as offenses "against a minor." *Id.* (quoting 34 U.S.C. §§ 20911(1), (5)(A), (7)). According to SORNA's registration scheme, any individual deemed a "sex offender" is required to register in every state where he or she resides, works, or studies by providing certain statutorily mandated information. *See id.* (citing §§ 20913(a), 20914). Further, the registration must be kept current, thus requiring periodic in-person reporting to a law enforcement office, for a period ranging from fifteen years to life based on the severity of the underlying crime. *Id.* (citing §§ 20915, 20918).

Plaintiff brought this action seeking a declaration that (1) SORNA does not apply to him and (2) he need not register as a sex offender in the State of Indiana. [DE 4, ¶¶ 12, 17]. In his Complaint, Plaintiff based the belief that SORNA is inapplicable on the grounds that he (a) is no longer required to comply with SORNA's registration requirements as a condition of his supervised release and (b) was not convicted of a qualifying "sex offense" that would otherwise require him to register as a sex offender. [*Id.*, ¶¶ 12–13, 15, 17]. Thus, given Plaintiff's assertion, Defendant framed the main focus of his 12(c) Motion as follows: "Based on the allegations in the

complaint, the Court is faced with a pure question of law: whether Congress intended for sex offenses under 34 U.S.C. § 20911(5)(ii), including violations of 18 U.S.C. § 2421, to fall within the exception to a registrable sex offense under SORNA." [DE 15 at 5]. Agreeing with Defendant's framing of the issue, Plaintiff similarly framed the question as "whether [Plaintiff's] conviction for transporting an individual in interstate commerce with intent to engage in prostitution in violation of 18 U.S.C. § 2421 is a sex offense under 34 U.S.C. § 20911 . . . ." [DE 21 at 2]. Therefore, taken together, the central issue is one of statutory interpretation concerning the term "sex offense."

Statutory analysis "begins with the text," *Ross v. Black*, 578 U.S. 632, 638 (2016), and unless a term is otherwise defined by Congress, the Court will look to the text's "ordinary, contemporary, common meaning." *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 498 (7th Cir. 2025) (quoting *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023)). "Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive." *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). Moreover, a statute should be read to avoid "render[ing] a word or phrase redundant or meaningless." *Id.* at 396–97 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995)). Finally, statutory provisions should not be read in isolation as "a fair reading of legislation demands a fair understanding of the legislative plan," *King v. Burwell*, 576 U.S. 473, 498 (2015), and thus the statute's words "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

SORNA defines "sex offense," in relevant part, as follows:

Except as limited by subparagraph (B) or (C), the term 'sex offense' means

. . .

iii.     a Federal offense (including an offense prosecuted under section 1152 or 1153 of
        Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A,
        or 2258), or 117, of Title 18[.]

§ 20911(5)(A). As alluded to in Subsection (A), Subsections (B) and (C) provide exceptions to a

registrable sex offense. Relevant here, Subsection (C) states:

> An offense involving **consensual sexual conduct** is not a sex offense for the
> purposes of this subchapter if the victim was an adult, unless the adult was under
> the custodial authority of the offender at the time of the offense, or if the victim was
> at least 13 years old and the offender was not more than 4 years older than the
> victim.

§ 20911(5)(C) (emphasis added).

Here, Defendant essentially argues that because Plaintiff's underlying criminal conviction

for violating § 2421—an offense within Chapter 117 of Title 18—is a specifically included

federal offense under Subsection (5)(A)(iii), the plain language of Subsection (A) indicates that

Congress did not intend for Subsection (C)'s exception to apply.[3] [DE 15 at 14]. In contrast,

Plaintiff argues that the plain language of Subsection (A), particularly that stating "[e]xcept as

limited by subparagraphs (B) or (C)," shows an intent by Congress to limit the definition of " sex

offense" and that it does not matter whether his underlying conviction is a specifically included

---

[3] Defendant goes on to provide additional purpose, history, and context grounds for why the adoption of Plaintiff's
proposed interpretation would lead to illogical results. First, Defendant argues that when considering Plaintiff's
specific underlying conviction, there is always the possibility that either no sexual activity took place or that only an
attempt was made, thereby permitting *some* individuals but not others to take advantage of the exception under
Subsection (C) despite committing the same offense. [DE 15 at 15 (citing *United State v. Rodriguez*, 460 F. Supp. 2d
902, 909 (S.D. Ind. 2006) ("Courts will look beyond the text of a statute only when the meaning of the language is
not plain, the statutory context or structure as a whole reveals an ambiguity, or giving effect to the plain meaning
will lead to illogical and absurd results."))]. Second, Defendant argues that the legislative history indicates an
unequivocal showing that Subsection (C)'s exception was only intended for the first two definitions under
Subsection (A). [*Id.* at 16]. In support, Defendant relies on a Tenth Circuit decision which found that the only
references to the term "consensual sexual conduct" in the legislative history addressed consensual sexual conduct
between juveniles and consensual sexual conduct between adults previously criminalized by state sodomy laws. *See
United States v. Alexander*, 802 F.3d 1134, 1139 (10th Cir. 2015) (citing 152 Cong. Rec. H5705–01, at 5723–24
(daily ed. July 25, 20060, H.R. Rep. No. 105–256, at 40–41 (Sept. 18, 1997)). The Court notes these arguments but
finds that because the issue is properly resolved upon the statute's plain text alone, the Court need not address these
arguments further.

offense so long as one of the two exceptions apply. [DE 21 at 3]. Plaintiff further argues that

under Subsection (C), his conduct was "consensual," thereby qualifying him for the exception.

To begin, it is true that § 2421 is a specifically included offense under Subsection

(5)(A)(iii), and thus its inclusion would ordinarily qualify it as a sex offense absent an applicable

exception.[4] Defendant's reading appears to assume, however, that the statute's mere inclusion

under Subsection (5)(A)(iii) automatically ends the inquiry there. This disregards the opening

language of Subsection (A) which, as Plaintiff rightfully points out, would override Defendant's

interpretation when either Subsection (B) or (C) applies. As a result, the Court must therefore

turn to the language of the relevant exception under Subsection (C) to determine whether

Plaintiff's conduct qualifies. And because neither party is arguing the victim in the underlying

criminal conviction was either a minor or an adult under Plaintiff's custodial authority at the time

of the offense, the only relevant issue for the Court to analyze is whether Plaintiff was convicted

of "[a]n offense involving **consensual sexual conduct**." § 20911(5)(C) (emphasis added).

Here, Plaintiff argues for a strict textualist reading of Subsection (C) and focuses

extensively on the term "consensual." [DE 21 at 4–5]. To this end, he makes two arguments.

First, he asserts that he qualifies for the exception because nothing in the indictment, the plea

agreement, the plea colloquy, or any other entry from the underlying criminal matter was offered

to prove his conduct was non-consensual which, according to Plaintiff, means his conduct had to

have been consensual. [DE 21 at 5]. Second, Plaintiff argues that the phrase "consensual sexual

conduct"—particularly "conduct"—should be read broadly, and that because the victim in the

---

[4] Because Plaintiff's underlying criminal conviction is for a specifically listed offense under Subsection (5)(A)(iii), the Court need not address which analytical framework—the categorical approach, the modified categorial approach, or the circumstance-specific approach—is most appropriate for deciding whether an individual has met SORNA's definition of a "sex offense." [DE 15 at 7; DE 21 at 4]. *See United States v. Thayer*, 40 F.4th 797,800 (7th Cir. 2022). As Defendant notes, that is because these frameworks are used for determining whether predicate state crimes may otherwise qualify as a "sex offense" under SORNA. [DE 15 at 9 (citing *id.*)]. But where the offense is already a qualifying sex offense, no purpose is served in engaging in such an analysis.

underlying criminal matter engaged in consensual sex with others, Plaintiff is therefore entitled

to Subsection (C)'s exception. [*See* DE 28 at 13:15–21, 18:21–22]. There are, however, a few

glaring issues with Plaintiff's construction.

First, Plaintiff's reading assumes that evidence going toward consent is a prerequisite

showing that the Government must proffer. [*See* DE 28 at 25:1–20]. As Defendant notes, though,

the nature of Plaintiff's criminal conviction under § 2421, which involves "transport[ing] any

individual . . . with intent that such individual engage in prostitution, or in any sexual activity . . .

or attempts to do so," *see* § 2421(a), does not require proof of consent, and thus there would not

be a basis to support a determination that Plaintiff's conduct was "consensual." [DE 15 at 14–

15]. Likewise, the overwhelming majority of included offenses listed within Subsection

(5)(A)(iii) do not require proof of consent, and those few that do may only require proof of

consent to the degree that it concerns any elements of coercion. *See, e.g.*, 18 U.S.C. §§ 1591,

2241, 2242, 2422 (requiring proof of coercion, intimidation, or enticement). Thus, to accept

Plaintiff's construction would be to impose an onerous burden upon the Government to proffer

evidence of consent when consent is often irrelevant to the underlying charge. Moreover,

requiring the government to prove the applicability of a statutory provision or safe harbor that its

opponent, and not itself, wishes to invoke invariably seems counter-intuitive. *Cf., e.g., Blow v.*

*Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) (noting that for violations of the autodialing

prohibition under the Telephone Consumer Protection Act, the defendant bears the burden of

proving the affirmative defense of "express consent"); *United States v. Acevedo-Fitz*, 739 F.3d

967, 972 (7th Cir. 2014) (explaining that the defendant bears the burden of satisfying the

statutory criteria necessary to qualify for the safety valve provision under 18 U.S.C. § 3553(f),

and that the defendant's burden cannot be met "if the government challenges the 'truthfulness,

accuracy, or completeness' of his information and he 'does not produce anything to persuade the district court that his submissions are truthful and complete'").[5]

Even more notable, though, is that this construction—stating the failure to offer proof of non-consent equates to a demonstration that the conduct is therefore consensual—would result in a wrecking ball sized hole in the statute permitting any individual to take advantage of the exception simply by pointing out this perceived design flaw. Not only is this approach impractical, but it goes against SORNA's express purpose. *See* § 20901 (stating that the purpose of SORNA is "to protect the public from sex offenders and offenders against children"); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 482 (7th Cir. 2024) (alteration omitted) (quoting *King v. Burwell*, 576 U.S. 473, 493 (2015) (providing that "we cannot interpret federal statutes to negate their own stated purposes")). And although Plaintiff is likely correct that Congress sought to limit the definition of "sex offense" by offering a consent-based exception, the decision to include numerous offenses not requiring proof of consent as qualifying "sex offenses," as well as the decision not to impose an express burden upon the Government to offer such proof, strongly suggests Congress never intended the limitation to extend as far as Plaintiff claims. *See Supervalu, Inc. v. United Food and Com. Workers Union and Emps. Midwest Pension Fund*, 155 F.4th 913, 926 (7th Cir. 2025) (quoting *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025) ("Courts must 'read' a statute 'the way Congress wrote it.'").

Second, as stated above, Plaintiff argues that the phrase "consensual sexual conduct"— particularly "conduct"—should be interpreted broadly, and that because the victim in the

---

[5] As the Court noted during the motion hearing [*see* DE 24], there is also an issue of waiver surrounding the request that the Government offer proof of consent, particularly where the Government did not seek to do so during Plaintiff's initial sentencing in 2013 or during his resentencing in 2016. [*See* DE 28 at 26:17–28:8]. It is unclear from the Court's perspective that it would be procedurally proper to revisit an unaddressed issue that has dwelt undisturbed for this long.

underlying criminal matter engaged in consensual sex with others, Plaintiff should qualify for

Subsection (C)'s exception. [*See* DE 28 at 13:15–21, 18:21–22]. As a reminder, Subsection (C)

states, "An offense **involving consensual sexual conduct** is not a sex offense for purposes of

this subchapter **if the victim was an adult**[.]" § 20911(5)(C) (emphasis added). Here, Plaintiff's

conviction under § 2421 was for "**transport[ing] an[] individual** in interstate or foreign

commerce . . . **with intent that such individual engage in prostitution, or in any sexual

activity** for which any person can be charged with a criminal offense, or attempts to do so . . . ."

*See* § 2421(a) (emphasis added). Put another way, the conduct being charged is not for engaging

in sexual activity, but for *transporting another with the intent that the "other" individual engage

in sexual activity*. This is crucial because the language of Subsection (C) suggests three things:

(1) sexual conduct was integral to the underlying offense—"an offense *involving* sexual

conduct"; (2) the individual convicted of the offense was himself engaged in some form of

sexual activity; and (3) the individual engaged in said sexual activity with the victim. Applying

this to Plaintiff, it cannot be said that the offense for which Plaintiff was convicted involved

"sexual conduct."

Nowhere in the parties' briefing or in the underlying criminal conviction though is it

shown that Plaintiff had sex with the victim; only that he transported the victim for her to then

have sex with others. Further, nowhere in the sources relied upon by the parties or the Court is it

suggested that the act of "transporting" is sexual per se. To suggest otherwise would, in earnest,

be nonsensical.[6] Finally, the underlying offense does not actually require sexual activity to occur,

only that the convicted transporter *intend* for such activity to take place. Where Congress

---

[6] To put it differently, one would not conclude that a contractor, through the act of constructing a brothel, engages in sexual conduct, even if sexual activity was to occur within the brothel. If the contractor does not engage in a sexual act himself—that is, an act of intercourse, his conduct cannot be sexual.

explicitly requires that the offense "involve consensual sexual conduct," and the defendant was convicted for an offense where there ultimately was no sexual activity taking place, it seems illogical to conclude that the exception would apply.

To rectify this issue, Plaintiff asserts that "conduct" should be read broadly. [DE 28 at 18:21–22]. Plaintiff argues that sexual conduct is not a specific act but is instead more encompassing, and that the "conduct of transporting somebody for purposes of prostitution, prostitution being sexual in nature, . . . would fall under the exception of sexual conduct." [*Id.* at 19:9–16; *see also id.* at 20:18–20 ("I do not believe . . . that Congress intended that conduct only be limited to an act, a sexual act of rape, of intercourse, of sodomy, of deviate conduct. I believe it is more encompassing than that.")]. But no citations supporting such an interpretation, however, have been offered to the Court. Nor is it clear for the reasons discussed above that Congress intended for "conduct" to be read as broadly as Plaintiff asserts. For an act to be "sexual" within the confines of its plain and ordinary meaning, it must in some way involve sexual intercourse, whether verbally, sensually, or physically.[7] Thus, to read "conduct" in the

---

[7] Congress did not define "sexual conduct," so the Court may look to extrinsic sources for guidance in determining the term's plain and ordinary meaning. *See United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) (noting that courts often look to dictionary definitions and supporting or analogous statutory provisions when interpreting an undefined term). General dictionaries define "sexual" as "having or involving sex." *Sexual*, MERRIAM-WEBSTER, SEXUAL Definition & Meaning - Merriam-Webster (last visited Dec. 15, 2025); *see also Sexual*, DICTIONARY.COM, SEXUAL Definition & Meaning | Dictionary.com (defining "sexual" as "of, relating to, or for sex") (last visited Dec. 15, 2025). "Conduct" is generally defined as an action or way of acting. *See Conduct*, MERRIAM-WEBSTER, CONDUCT Definition & Meaning - Merriam-Webster (defining "conduct" as "an act or omission to act") (last visited Dec. 15, 2025); *Conduct*, DICTIONARY.COM, CONDUCT Definition & Meaning | Dictionary.com (defining "conduct" as "personal behavior; way of acting; bearing or deportment") (last visited Dec. 15, 2025). Thus, when taken together, "sexual conduct" can be interpreted as the act of engaging in sexual intercourse or any verbal, sensual, or physical act or behavior involving sex. *Cf. Sexual Relations*, Black's Law Dictionary (12th ed. 2024) (defining "sexual relations" as "[s]exual intercourse" or "[p]hysical sexual activity that does not necessarily culminate in intercourse . . . usu[ally] involve[s] the touching of another's breast, vagina, penis, or anus"). Likewise, analogous statutory definitions lead to the same result. In further defining the first definition of a "sex offense" under Subsection (5)(A)(i), 18 U.S.C. § 2246(2) defines a "sexual act" as involving contact with or penetration of the penis, vulva, genitals, or anus, whilst § 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person . . . ." Finally, 18 U.S.C. § 2256(2)(A) defines the similarly worded phrase "sexually explicit conduct" as "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal . . . ; (ii) bestiality; [and] (iii) masturbation[.]"

broad and proximate manner that Plaintiff prescribes would inevitably downplay or outright eliminate the requirement that the ultimate act be "sexual." *See Berkos*, 543 F.3d at 396–97 (explaining that a statute should be read so as to avoid "render[ing] a word or phrase redundant or meaningless").

Plaintiff has therefore not demonstrated that he was convicted of an offense "involving consensual sexual conduct," *see* § 20911(5)(C), nor has he shown that he qualifies for an exception to an otherwise registrable "sex offense" as defined by Subsection (A). Accordingly, Plaintiff's claim for declaratory relief that he need not register as a sex offender fails as a matter of law. Judgment on the pleadings in favor of Defendant is therefore warranted.[8]

## CONCLUSION

For all of these reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings [DE 14] and **DENIES** Plaintiff's request to convert Defendant's Motion into a motion for summary judgment [DE 21, 24]. The Court hereby ORDERS immediately and moving forward, Plaintiff **COMPLY** with SORNA's sex-offender registration requirements.

SO ORDERED.

ENTERED: December 15, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court

---

[8] Because the Court finds that Plaintiff was convicted of a qualifying sex offense under Subsection (5)(A)(iii) and is not otherwise exempt from registration under § 20911(5)(C), the Court need not address Defendant's alternative argument that Plaintiff be required to register under Indiana state law. [*See* DE 15 at 20].

45D10-2502-MI-000059
Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

U.S.C.A. – 7th Circuit
R E C E I V E D

JAN 0 9 2026

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12 CR 144 |
| | ) | |
| MONTELL WILLIAMS | ) | |

### OPINION and ORDER

This matter is before the court on defendant Montell Williams's motion to modify the duration and conditions of his term of supervised release. (DE # 142.) For the reasons set forth below, the motion is granted, in part, and denied, in part.

### I.    BACKGROUND

In 2013, defendant pleaded guilty to transporting an individual in interstate commerce with intent to engage in prostitution in violation of the Mann Act, 18 U.S.C. § 2421. (DE ## 20, 43.) The Honorable Judge Rudy Lozano sentenced defendant to the statutory maximum term of 120 months imprisonment, plus eight years supervised release. (DE # 64.) As a condition of supervised release, Judge Lozano required that defendant comply with the requirements of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911, *et seq.* (*Id.*)

On appeal, the Seventh Circuit remanded for further explanation regarding two conditions of supervision unrelated to the SORNA issue. (DE # 81.) At resentencing, Judge Lozano sentenced defendant to 120 months imprisonment, plus a lifetime term of supervised release. (DE ## 120, 128.) The condition related to SORNA was again imposed. (*Id.*)

Defendant completed his term of incarceration, and has served approximately three-and-a-half years of his term of supervised release without any violations. (*See* DE # 148 at 1.) He now asks the court to: (1) strike the supervised release condition requiring compliance with SORNA; and (2) reduce his term of supervision from lifetime to five years. (DE # 142.)

## II.    LEGAL STANDARD

A court may modify the conditions of supervised release at any time prior to the expiration of the term, after consideration of relevant Section 3553(a) factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence, and the interests of protecting the public. 18 U.S.C. § 3583(e). A hearing is not required on the present motion because the modifications sought are favorable to the defendant and do not extend the term of supervised release. Fed. R. Crim. P. 32.1(c).

## III.    DISCUSSION

SORNA is a federal statute which was originally enacted to "protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. It "establishes a comprehensive national system for the registration of those offenders," and requires offenders to register in each jurisdiction (generally, a state such as Indiana) where he or she resides, works, or is a student. *Id.* § 20913. It is a federal crime to fail to register as a sex offender, 18 U.S.C. § 2250, but defendant has not been charged with that crime in this case.

2

When defendant first moved for the court to strike the SORNA condition, he based his request on the premise that SORNA does not apply to him. (DE # 142.) Specifically, defendant pointed out that SORNA contains a consensual sexual conduct exception to its definition of "sex offender." (*Id.*) However, defendant has clarified that he does not seek a determination of whether SORNA's requirements apply to him. (DE # 156 at 3-4.) Rather, defendant simply asks the court to strike the requirement of compliance with SORNA from the list of conditions related to his lifetime term of supervised release. (*Id.*)

The issue of SORNA has been raised in this case on various occasions. Historically, the position of both the Government and the Probation Department was that defendant would not be required to register as a sex offender as a result of his conviction in this case.[1] (*See, e.g.,* DE # 111 at 6; DE # 118 at 3, 15.) Oddly, however, defendant's plea agreement lists compliance with SORNA as a condition of supervised release. (DE # 40 at 5.) The SORNA condition was imposed during defendant's original sentencing (Sent. Tr. at 25), and defendant did not challenge the issue on appeal.

During the resentencing hearing, defense counsel Micheal Bosch argued that there was no legal basis for a SORNA condition, and directed the court's attention to the Probation Department's statement on the matter, which appeared in the Addendum

---

[1]  The Government and Probation Department have since changed course and argue that defendant *is* likely subject to the requirements of SORNA. (*See, e.g.,* DE ## 148, 149.) Regardless, as explained herein, the court need not make this determination today.

to the Presentence Report. (Resent. Tr. at 11.) In that Addendum, Probation Officer

David Beier stated:

> Probation does not believe the defendant is required to register under SORNA. This opinion is based on my review of SORNA and discussions with personnel from the Lake County Sex Offender Registry. Prior to the original sentencing in 2013, Probation was of the same opinion.

(DE # 111 at 6.) The Government, represented by Assistant United States Attorney Jill

Koster, responded to Bosch's argument with the following:

> Judge, I think legally, based on my review of the case law and the statutes, that that is true based on his count of conviction. The Defendant did agree to register as a sex offender in his plea, and I think that sex offender registration is clearly appropriate in this case given his criminal conduct; but unfortunately, I don't think the law provides a clear mechanism to hold him accountable under SORNA. So in lieu of him being required to register as a sex offender, the Government is arguing that he should receive a lifetime term of supervised release following his release from incarceration because he is clearly a dangerous individual and poses a significant risk of danger to, in particular, young women.

(Resent. Tr. at 11-12.)

Judge Lozano then stated that he had been in contact with the Indiana

Department of Corrections Sex and Violent Offender Registration Department. (*Id.*) The

Department, Judge Lozano said, indicated that defendant *would be* required register as a

sex offender upon release. (*Id.* at 12.) Counsel for the Government stated that "my legal

research and Probation's legal research netted a different conclusion [than the

Department's]," and urged the court not to impose the condition: "[T]he Government

persists in asking the Court to impose a lifetime term of supervised release. . . .

4

[A]lthough the court has one opinion, it is not crystal clear that he is going to be legally required to register as a sex offender." (*Id.* at 15.)

Judge Lozano did not ultimately conclude that defendant was (or was not) subject to the requirements of SORNA. However, he did impose the SORNA condition tentatively and with the understanding that the matter would be revisited after defendant's release. Specifically, Judge Lozano stated: "The court is going to order that he register; however, at the time of his release, the [Indiana] Registry may make a final decision as to whether Defendant is required to register on the indictment, judgment, or committal order, other relevant conduct. In other words, right now I'm basing it on what they told me. That's liable to change at any time." (Resent. Tr. at 12.)

Judge Lozano was fully aware of the lack of clarity around the issue of SORNA in this case, hence the provisional ruling. As the undersigned reviews the matter today, it must acknowledge that the current record does not contain evidence that non-consensual sex occurred in connection with defendant's criminal conduct, as defendant points out. Thus, the court would be inclined to find that defendant is not subject to the requirements of SORNA, as was advocated by all parties involved – the defendant, the Government, and the Probation Department– during resentencing. The court need not issue such a ruling, however, because defendant is not requesting it. (DE # 156 at 3-4.)

Nonetheless, the court finds that striking the SORNA condition in this case and at this time is appropriate, because to impose it would be a greater deprivation of liberty than is reasonably necessary to achieve the goal of deterrence, incapacitation,

and rehabilitation. *See United States v. Cruz-Rivera*, 74 F.4th 503, 510 (7th Cir. 2023); 18 U.S.C. § 3583(d)(2). As the court explains in more detail below, a lifetime term of supervised release will continue to apply to defendant for the time being. This lifetime term requires that, amongst other things, defendant comply with various reporting and visitation requirements, maintain lawful employment, submit to drug testing, and participate in programming related to the issues of mental health and domestic violence. (DE # 120.) A lifetime term of supervision with such conditions adequately promotes the goals of deterrence, incapacitation, and rehabilitation. Removing the tether linking the legally-murky issue of SORNA registration to defendant's term of supervised release is appropriate in light of the extraordinary length of supervision and the remaining conditions.

It is important to note that the court's decision to eliminate SORNA compliance as a condition of defendant's supervised release does not effect the independent operation of the SORNA statute itself. SORNA still requires a sex offender to register as such, and a sex offender may still be prosecuted for failure to register under 18 U.S.C. § 2250, whether or not a court has imposed registration as a condition of supervision. A conviction under this statute carries a possible penalty of ten years imprisonment. *Id.* The court strongly urges defendant to consider these facts if the relevant State authorities have informed defendant (or inform him in the future) that he is subject to registration in a jurisdiction.

6

As the court already briefly noted, defendant's request to reduce his lifetime term of supervision to five years is denied. The court has considered defendant's argument that he has completed three-and-a-half years of supervision without incident. This is a commendable achievement. The court is also aware of the fact that defendant's criminal activity did not involve children. However, the court has a responsibility to protect adult members of society as well (including, in this case, young women), from individuals with a proven track record of abuse and trafficking for their own gain. The court is also cognizant of defendant's relatively young age (44) and his crime of conviction (human trafficking with intent to engage in prostitution), and how easily defendant could fall back into a lifestyle involving the same crimes. As Judge Lozano articulated when he imposed the lifetime term of supervision during resentencing, "it's easy money . . . she does all the work and you get all the money, that's easy to become habit forming." (Resent. Tr. at 49.) Though further progress and law-abiding behavior may change the court's assessment in the future, the nature of defendant's crime of conviction and the risk of defendant's recidivism is too great at this time to justify any reduction in the duration of supervision.

**IV.    CONCLUSION**

For the foregoing reasons, defendant's motion to modify the duration and conditions of supervised release (DE # 142) is **GRANTED, in part, and DENIED, in part.** The court **STRIKES** the condition of supervision related to compliance with the requirements of the Sex Offender Registration and Notification Act, but defendant

remains on a lifetime term of supervised release. Defendant's related motion to

supplement the record is **GRANTED** (DE # 156), and the motion for hearing is

**DENIED** (DE # 151).

                              **SO ORDERED.**

        Date: August 30, 2024

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT

8

Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

STATE OF INDIANA      )     IN THE LAKE COUNTY _____ COURT
                     ) SS:
COUNTY OF LAKE        )     CAUSE NO.:

MONTEL WILLIAMS              )
     Plaintiff               )
                        )
     Vs.                    )
                        )
LLOYD ARNOLD, in his official    )
Capacity as Commissioner of Indiana )
Department of corrections.       )
     Defendant.            )

U.S.C.A. – 7th Circuit
RECEIVED
JAN 09 2026

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, Montel Williams, by Counsel Russell W. Brown, Jr. of The Region Lawyers, Inc., pursuant to Indiana Code § 34-14-1-1 *et seq.* files this Complaint for Declaratory Judgment against Lloyd Arnold, in his official capacity as Commissioner of Indiana Department of Corrections and in support thereof complains as follows:

**PARTIES**

1. Plaintiff, Montel Williams is an adult resident of the County of Lake, State of Indiana.

2. Defendant Lloyd Arnold is the Commissioner of the Indiana Department of Corrections.

**BACKGROUND**

3. On January 9, 2013, Mr. Williams plead to Count 3, a violation of 18 U.S.C. § 2421, Transporting an Individual in Interstate Commerce with Intent to Engage in Prostitution in the Northern District of Indiana under Cause Number 2:12-CR-144. (Plea Agreement Attached Hereto as Exhibit "A").

4. On July 19, 2013, Mr. Williams was sentenced to the statutory maximum of 120 months in the Federal Bureau of Prisons with eight (8) years of supervised release upon release from custody. (Sentencing Order Attached Hereto as Exhibit "B").

5. Mr. Williams appealed two of his conditions of supervised release which the 7th Circuit Court of Appeals remanded to the district court for reconsideration of the challenged conditions. (Order Attached Hereto as Exhibit "C").

6. On August 30, 2016, Mr. Williams was resentenced to the maximum of 120 months in the Federal Bureau of Prisons; however, this time he was sentenced to a lifetime supervised release. (Sentencing Order attached Hereto as Exhibit "D").

7. As a mandatory condition of supervised release, the district court ordered for him to comply with the requirements of Sex Offender Registration and Notification Act "SORNA" (42 U.S.C. § 16911, et. seq.) (Exhibit "D").

8. Mr. Williams was released from custody in June 2020.

9. Upon his release, Mr. Williams was ordered to register as a sex offender in Indiana pursuant to the condition of his supervised release.

10. Mr. Williams filed a Motion to Modify the duration and conditions of his supervised release.

11. On August 30, 2024, the district court removed the condition that he be required to comply with SORNA. (Order attached hereto as Exhibit "E").

12. Without the specific supervised release condition that Mr. Williams comply with SORNA, SORNA does not apply to his case.

13. 34 U.S.C. § 20911(5)(A) states in pertinent part: "Generally except as limited by subparagraph (B) or (C), the term 'sex offense' means…" Subparagraph (C) states:

"An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim."

14. The Department of Justice has an office that is dedicated to SORNA. Said Office is Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART). SMART has a website where they provide up to date information and resources to understand SORNA and when it applies. According to SMART, the Specified Federal Offenses that are sex offenses under SORNA includes 18 U.S.C. § 2421 (Transportation of a Minor for Illegal Sexual Activity).

15. Additionally, SMART addresses the exception under (5)(C) and states: "SORNA does **not** require registration in the following situations: 1) if both participants are adults, and neither is under the custodial authority of the other (e.g., inmate/prison guard) and the conduct was consensual, then this conduct does not constitute a registrable sex offense for purposes of the Adam Walsh Act." (See Attached printout from SMART Attached hereto as Exhibit "F").

16. In the present case, there were no facts that were proven by the Government or admitted to by Mr. Williams that would indicate the sexual conduct was anything but consensual. Additionally, no minors were involved.

17. Mr. Williams was not convicted of a sex offense and does not have any condition of supervised release that he comply with SORNA. Therefore, he should no longer have to register with the State of Indiana.

18. SORNA applies to a violation of 18 U.S.C. § 2421 only if the victim is a minor.

19. The victims involved in all counts of the superseding indictment Mr. Williams faced were not minors.

20. At the time of sentencing, the Federal Probation agreed that SORNA did not apply to Mr. Williams. Said position was based upon independent research done by the probation officer and consulting with the local sex offender registry. (See Addendum to PSR ¶ 5(C) attached hereto as Exhibit "F").

21. Additionally, the Federal Government appeared to concede in its sentencing memorandum that Mr. Williams would not be required to register as a sex offender. (See Sentencing Memorandum PP 3, 15 attached hereto as Exhibit "G").

WHEREFORE, Plaintiff, by Counsel prays that the Court enter declaratory judgment finding that he is not a sex offender, does not have to register as a sex offender in Indiana and further order that the Indiana Department of Corrections remove the Plaintiff from the Sex Offender Registry and for all other just and proper relief.

Respectfully Submitted,

The Region Lawyers, Inc.

By: /s/ Russell W. Brown, Jr.
    Russell W. Brown, Jr. #29628-64
    Attorney for Plaintiff
    9223 Broadway, Suite E
    Merrillville, IN 46410
    219-750-9380