# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

U.S.C.A. – 7th Circuit
RECEIVED

APR 0 2 2026

**MONTELL WILLIAMS**,
 Plaintiff–Appellant,

v.

**LLOYD ARNOLD**, in his official capacity
 as Commissioner of the Indiana Department of Correction,
 Defendant–Appellee.

**Appeal No. 26-1014**
 (From N.D. Indiana Case No. 2:25-cv-00108-GSL-APR)

# APPELLANT'S OPENING BRIEF

# TABLE OF CONTENTS

1. Jurisdictional Statement
2. Issues Presented
3. Statement of the Case
4. Summary of the Argument
5. Standard of Review
6. Argument
7. I. No Article III Case or Controversy
8. II. Scope of Removal and Limits of Federal Jurisdiction
9. III. Binding Effect of Prior Federal Judgment and Advisory Opinion Violation
10. IV. Sovereign Immunity and Lack of Proper Ex parte Young Defendant
11. Conclusion
12. Certificate of Compliance
13. Certificate of Service

# TABLE OF AUTHORITIES

**Supreme Court of the United States**

- *Arizona v. California*, 460 U.S. 605 (1983)
- *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)
- *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)
- *Flast v. Cohen*, 392 U.S. 83 (1968)
- *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)
- *Heck v. Humphrey*, 512 U.S. 477 (1994)
- *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002)
- *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)
- *Peacock v. Thomas*, 516 U.S. 349 (1996)
- *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995)
- *Schilling v. Rogers*, 363 U.S. 666 (1960)
- *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)
- *United States v. Addonizio*, 442 U.S. 178 (1979)
- *United States v. Cotton*, 535 U.S. 625 (2002)

**United States Court of Appeals for the Seventh Circuit**

- *Best v. Shell Oil Co.*, 107 F.3d 544 (7th Cir. 1997)
- *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 (7th Cir. 2002)
- *Doe v. Allied-Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993)
- *Franklin v. Zaruba*, 150 F.3d 682 (7th Cir. 1998)
- *Gleash v. Yuswak*, 308 F.3d 758 (7th Cir. 2002)
- *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007)
- *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020)
- *Romandine v. United States*, 206 F.3d 731 (7th Cir. 2000)
- *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481 (7th Cir. 1997)
- *United States v. Fischer*, 833 F.3d 796 (7th Cir. 2016)
- *United States v. Neal*, 810 F.3d 512 (7th Cir. 2016)
- *United States v. Parker*, 101 F.3d 527 (7th Cir. 1996)
- *Williams v. Commissioner*, 1 F.3d 502 (7th Cir. 1993)

**Other Federal Authorities**

- *Council 31 of the Am. Fed'n of State, County, & Mun. Emps. v. Quinn*, 680 F.3d 875 (7th Cir. 2012) *(if cited—verify exact inclusion)*
- *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365 (7th Cir. 2010)
- *Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021)
- *Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770 (7th Cir. 1999)
- *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876 (7th Cir. 2002)

# Statutes

- 18 U.S.C. § 3583
- 18 U.S.C. § 3583(e)
- 28 U.S.C. § 1441
- 28 U.S.C. § 2201
- 34 U.S.C. § 20911 et seq.

# JURISDICTIONAL STATEMENT

## A. Basis for District Court Jurisdiction

This action was removed to federal court by Defendant pursuant to 28 U.S.C. § 1441, asserting that Plaintiff's claims arose under federal law within the meaning of 28 U.S.C. § 1331. The district court accepted removal and exercised jurisdiction on that basis.

Plaintiff did not invoke federal jurisdiction. Plaintiff filed this action in state court as a declaratory judgment proceeding seeking clarification of his legal status. It was Defendant—not Plaintiff—who elected to remove the case to federal court and thereby invoked federal jurisdiction. Accordingly, the district court's authority was entirely derivative of Defendant's removal and limited to the claims and issues as framed in Plaintiff's original complaint.

The district court subsequently entered a final order on December 15, 2025, compelling compliance with the Sex Offender Registration and Notification Act ("SORNA"). (A-1)

However, federal jurisdiction under Article III extends only to actual, ongoing "Cases" or "Controversies." U.S. Const. art. III, § 2. As set forth in the Argument, no live controversy existed at the time of judgment. Defendant expressly acknowledged that SORNA did not apply and that no enforceable legal obligation existed.  (A-49)

Because Defendant both invoked federal jurisdiction and simultaneously admitted that the sole federal issue presented—whether SORNA applied—was resolved in Plaintiff's favor, no justiciable controversy remained within the scope of the removed action.

Where no concrete and continuing dispute exists, federal courts lack subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).

Accordingly, the district court lacked constitutional authority to enter judgment, and its order must be vacated.

## B. Basis for Appellate Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291, which confers appellate jurisdiction over "final decisions" of the district courts.

The district court entered its final judgment on December 15, 2025. (A-1) That order disposed of all claims and is final within the meaning of § 1291.

Plaintiff–Appellant filed a timely notice of appeal under Federal Rule of Appellate Procedure 4(a)(1).

Where a district court enters judgment without Article III jurisdiction, this Court retains authority to review the judgment and vacate it. See *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007).

This principle applies with particular force where, as here, federal jurisdiction was invoked by the defendant through removal, yet the underlying federal issue was conceded and no live controversy remained. In such circumstances, the appellate court retains full authority to correct the jurisdictional error and vacate the resulting judgment.

## C. Timeliness of Appeal

The district court entered judgment on December 15, 2025. Plaintiff–Appellant filed a notice of appeal within the time prescribed by Federal Rule of Appellate Procedure 4(a)(1). The appeal is therefore timely.

## D. Appellate Jurisdictional Statement Conclusion

Because the district court entered a final decision and Appellant filed a timely notice of appeal, this Court has jurisdiction under 28 U.S.C. § 1291. The Court also has authority to determine its own jurisdiction and to vacate the judgment where, as here, the district court lacked Article III authority to adjudicate the case.

That lack of authority is especially clear given that federal jurisdiction was not invoked by Plaintiff, but rather by Defendant through removal, and no live controversy existed within the scope of that removed action at the time judgment was entered.

4.

# ISSUES PRESENTED

1. Whether the district court lacked Article III jurisdiction where Defendant's binding admissions established that no SORNA obligation existed and no live controversy remained.

2. Whether the district court exceeded the scope of removal by imposing a legal obligation never presented or disputed by the parties.

3. Whether the district court violated the binding effect of a prior federal sentencing judgment and issued an impermissible advisory opinion.

4. Whether sovereign immunity bars this action where the named defendant lacks any enforcement authority under Ex parte Young.

---

# STATEMENT OF THE CASE

## A. Nature of the Case and Course of Proceedings

This appeal arises from a district court order compelling Appellant to comply with the Sex Offender Registration and Notification Act ("SORNA") despite the absence of any operative legal predicate, in direct conflict with a prior final sentencing determination, and in the absence of any live Article III controversy at the time of judgment.

Appellant was convicted in the United States District Court for the Northern District of Indiana of a violation of 18 U.S.C. § 2421. He was sentenced to 120 months' imprisonment followed by a term of supervised release, which initially included a condition requiring compliance with SORNA.

On appeal, the Seventh Circuit remanded for reconsideration of certain supervised release conditions, including those related to SORNA. At resentencing, the district court again imposed a SORNA-related condition, while expressly acknowledging uncertainty as to whether Appellant was legally required to register.

That uncertainty was not hypothetical—it was confirmed in the record. At resentencing, both defense counsel and the Probation Department took the position that Appellant was not subject to SORNA. Probation, after consultation with the Lake County Sex Offender Registry, expressly concluded that SORNA did not apply.

Despite that consensus, the sentencing court imposed the condition provisionally, recognizing that the issue remained unresolved and would require later determination.

5.

That determination occurred.

Pursuant to 18 U.S.C. § 3583(e), Appellant moved to modify the conditions of supervised release. On August 30, 2024, the district court (Hon. James T. Moody) granted that motion in relevant part and entered an order striking the SORNA compliance condition. (A-45,46)

In doing so, the court made critical findings:

- The record did not support the conclusion that Appellant was subject to SORNA;
- All parties—including the Government and Probation—had previously taken the position that SORNA did not apply; and
- Continued imposition of a SORNA condition would constitute a greater deprivation of liberty than reasonably necessary under 18 U.S.C. § 3583(d).

This was a substantive exercise of sentencing authority under § 3583(e), constituting a final and binding determination. See United States v. Neal, 810 F.3d 512, 516 (7th Cir. 2016); United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996).

Following that order, Appellant was subject to no federally imposed SORNA obligation, and his name and likeness were removed from the Indiana Sex Offender Registry.

Following that final determination, Appellant filed a limited action in state court. At that time, no registration obligation existed, no enforcement action was pending or threatened, and Appellant had been removed from the registry. The case entered federal court solely through Defendant's removal—not because of any live federal controversy.

## B. The Absence of Any Registration Obligation

The August 30, 2024 order did more than modify a condition of supervision—it eliminated the only federal predicate ever asserted as a basis for requiring Appellant to register.

After that ruling:

- No federal court order required Appellant to register;
- No judicial finding established that SORNA applied;
- No enforcement authority existed; and
- No registry listing remained in effect.

This posture is dispositive. It defined—and strictly limited—the scope of any permissible judicial action. The Declaratory Judgment Act authorizes courts to resolve actual controversies—not to create legal obligations where none exist.

6.

## C. The District Court's Subsequent Order

Notwithstanding that final sentencing determination—and in the absence of any new statutory predicate or changed facts—the district court entered an order on December 15, 2025, compelling Appellant to comply with SORNA. (A-15)

In doing so, the court did not merely interpret federal law. It supplied the very determination the sentencing court had declined to make and effectively reinstated a legal obligation that had already been extinguished.

That was not interpretation—it was unauthorized supplementation of a final criminal judgment by a coordinate court.

## D. Consequences of the Judgment

The consequences of the December 15 order were immediate and severe—and entirely new.

Only after entry of that order:

- Appellant was placed back on the Indiana Sex Offender Registry;
- He was publicly designated as "non-compliant"; and
- He was subjected to threats of arrest and prosecution by local law enforcement authorities.

These harms did not exist prior to the district court's ruling. They arose solely as a result of it.

The Seventh Circuit has made clear that Article III does not permit jurisdiction to rest on harms "manufactured by the litigation itself." MainStreet Org. of Realtors v. Calumet City, 505 F.3d 742, 745 (7th Cir. 2007).

Here, the record demonstrates that no injury, no legal obligation, and no enforcement risk existed until the district court created them.

## E. Statement of Relevant Facts

The material facts are undisputed.

In its Answer, Defendant expressly admitted:

- That the sentencing court removed the SORNA condition (Answer 11); and
- That "[w]ithout the specific supervised release condition… SORNA does not apply to [Appellant's] case." (Answer 12). (A-49.)

7.

These statements constitute binding judicial admissions. See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997).

They conclusively establish that no legal obligation to register existed at the time of the district court's ruling.

**F. The District Court's Order**

Despite:

- A final sentencing determination eliminating the obligation;
- Appellant's removal from the registry; and
- Defendant's binding admissions that SORNA did not apply;

the district court ordered Appellant to comply with SORNA on December 15, 2025. (A-15)

That order imposed a legal obligation that did not exist, revived a regime that had been extinguished, and generated the very harms now used to justify its existence.

The Constitution does not permit jurisdiction to arise in that manner.

---

# SUMMARY OF THE ARGUMENT

The district court's judgment cannot stand because it rests on multiple, independent violations of constitutional limits on federal judicial power.

First, no Article III case or controversy existed at the time the district court acted. The undisputed record—including Defendant's binding judicial admissions—establishes that Appellant was under no obligation to comply with SORNA, faced no enforcement threat, and suffered no injury prior to the court's order. The only alleged harm arose after the district court imposed it. A federal court cannot manufacture jurisdiction by creating the very injury it purports to adjudicate. The judgment therefore constitutes an impermissible advisory opinion and must be vacated.

Second, even assuming Article III jurisdiction existed, the district court exceeded the limited scope of removal. This case arrived in federal court as a narrow declaratory action asking whether any SORNA obligation existed. Defendant not only defined that question—he answered it, admitting that no obligation applied. Rather than resolving that limited inquiry, the district court imposed a new legal obligation that was never presented, disputed, or sought by any party.

8.

In doing so, the court exceeded the jurisdiction conferred by removal and adjudicated an issue never properly before it.

Third, the district court's ruling contradicts the binding effect of a prior federal sentencing judgment and amounts to an impermissible advisory determination. The sentencing court (Hon. James T. Moody) exercised core authority under 18 U.S.C. § 3583(e) to remove any SORNA-based condition of supervised release, thereby eliminating the only federal predicate for registration. That judgment is final and binding. A coordinate federal court may not supply a determination the sentencing court deliberately declined to make, nor may it reimpose an extinguished legal obligation through collateral civil proceedings. By doing so, the district court created irreconcilable federal commands and exceeded its authority.

Fourth, the action is independently barred by sovereign immunity. The sole named defendant lacks any enforcement authority over sex-offender registration and therefore falls outside the narrow exception recognized in *Ex parte Young*. Without a proper enforcement connection, the district court lacked subject-matter jurisdiction to grant any relief. This defect is structural and cannot be waived.

Taken together, these errors are not merely procedural—they are jurisdictional. The district court acted without constitutional and statutory authority at every stage: it adjudicated in the absence of a live controversy, exceeded the limits of removal, contradicted a final federal judgment, and proceeded against an improper defendant. The resulting order is void. This Court should vacate the judgment and remand with instructions to dismiss for lack of jurisdiction.

# STANDARD OF REVIEW

This Court reviews questions of subject-matter jurisdiction, including Article III standing and mootness, de novo. It likewise reviews constitutional questions and issues concerning the scope of federal judicial authority de novo.

To the extent this appeal involves the legal effect of judicial admissions, the interpretation of a prior federal judgment, and the limits of jurisdiction following removal, those issues present pure questions of law and are also reviewed de novo.

# ARGUMENT

## I THE DISTRICT COURT LACKED ARTICLE III JURISDICTION, AND ITS JUDGMENT MUST BE VACATED BECAUSE NO LIVE CONTROVERSY EXISTED AFTER DEFENDANT'S BINDING ADMISSIONS

This case should have ended when Defendant admitted that SORNA does not apply. (A-49.) That binding judicial admission eliminated the only issue in dispute and extinguished Article III jurisdiction.

This appeal presents a threshold constitutional defect. The district court proceeded to judgment—and imposed an affirmative legal obligation—despite the absence of any live case or controversy as required by Article III. That error requires vacatur.

### A. The Only Issue Presented Was Whether SORNA Applied to Plaintiff

The scope of this case is not in dispute. Defendant himself defined it in the Notice of Removal.

Defendant removed this action on the ground that it presented a federal question—specifically, whether the Sex Offender Registration and Notification Act ("SORNA") applied to Plaintiff's federal conviction. (A-35.)

Critically, federal jurisdiction was not invoked by Plaintiff. Plaintiff filed this action in state court as a declaratory judgment proceeding. It was Defendant—not Plaintiff—who chose to remove the case and invoke federal jurisdiction. This procedural posture confirms that the federal court's authority was entirely derivative of Defendant's removal and limited to the issue Defendant identified.

While state courts are not bound by Article III and may entertain broader declaratory actions, that distinction ceased to matter the moment Defendant invoked federal jurisdiction. Upon removal under 28 U.S.C. § 1441, the case became subject to the strict limitations of Article III, and the district court was required to ensure that a live "case or controversy" existed at the time of adjudication—not merely at the time of state-court filing. See Steel Co. v. Citizens for a Better Environment (federal courts must confirm jurisdiction as a threshold matter in every case).

Accordingly, even assuming arguendo that the declaratory action was permissible when filed in state court, that fact could not supply federal jurisdiction after removal. A removed case must independently satisfy Article III at the time the federal court acts. If no live controversy exists at

that point, the federal court's only lawful options are dismissal or remand—not adjudication on the merits.

Accordingly, this case was a pure declaratory judgment action presenting a single legal question:

Whether Plaintiff had any obligation to register under SORNA. (A-35)

No enforcement action was pending. No criminal prosecution was at issue. No coercive relief was sought against Plaintiff. The case asked only whether a legal obligation existed.

And even in the declaratory judgment context, Article III requires a real and immediate dispute—not a hypothetical or extinguished one. See MedImmune, Inc. v. Genentech, Inc. (permitting pre-enforcement review only where a substantial, immediate controversy exists between adverse parties). Where, as here, Defendant admitted that no SORNA obligation applied and no enforcement threat was pending, the controversy necessary to sustain federal jurisdiction was absent at the time of decision.

That undisputed record fact is dispositive. It defined—and strictly limited—the district court's authority.

The Declaratory Judgment Act authorizes courts to resolve actual controversies—not to create new obligations where none exist.

## B. Defendant's Judicial Admissions Conclusively Resolved That Issue

In his Answer, Defendant made binding judicial admissions that eliminated any dispute regarding SORNA's applicability.

Defendant admitted that the federal sentencing court had removed the SORNA condition from Plaintiff's supervised release.

Most importantly, Defendant expressly conceded:

> "Without the specific supervised release condition… SORNA does not apply to [Plaintiff's] case." (A-49.)

That admission is dispositive.

Judicial admissions are binding and withdraw the admitted issue from contention. See Soo Line Railroad Co. v. St. Louis Southwestern Railway Co., 125 F.3d 481, 483 (7th Cir. 1997). Once made, they are conclusive and cannot be disregarded by the court.

Here, Defendant's admission answered the only question presented in the case: SORNA does not apply. At that point, there was nothing left to adjudicate.

---

## C. With No Dispute Remaining, Article III Required Dismissal

Article III limits federal jurisdiction to actual, ongoing cases or controversies. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101–02 (1998).Where the parties agree on the dispositive legal issue and no enforcement threat remains, the case ceases to present a live controversy and must be dismissed.

Federal courts may not issue advisory opinions or decide abstract questions. See *Flast v. Cohen*, 392 U.S. 83, 96 (1968).

That is precisely what occurred here.

Plaintiff asserted that SORNA did not apply.
Defendant admitted that SORNA did not apply.
No enforcement action existed.

With the only issue resolved, the case ceased to present a live controversy. At that moment, Article III jurisdiction terminated, and the district court's only lawful options were dismissal or remand—not adjudication on the merits.

This conclusion is reinforced by the procedural posture: the sentencing court had already entered a final order under 18 U.S.C. § 3583(e) removing the SORNA condition—eliminating the only federal predicate for any registration obligation. (A-39.)

At that point:
No federal law required registration.
No enforcement action was pending.
No injury existed.

Following that order, Appellant was removed from the registry, and no authority treated him as subject to any registration obligation. He was not under investigation, not under threat of enforcement, and not subject to any legal duty to register.

Prior to December 15, even federal authorities treated Appellant as having no present obligation. Only after the district court issued its order—and transmitted it to local officials—did any enforcement expectation arise.

12.

The harm did not exist until the order issued. As confirmed on December 30th 2025 by federal probation officer Peter Sgroi, enforcement began only after the order was transmitted, at which point local authorities demanded compliance. (A-54).

The legal and factual status quo was settled. No obligation existed, and no enforcement mechanism was in motion.

Because no live dispute existed, the district court lacked constitutional authority to proceed.

## D. The District Court Instead Created a Dispute and Imposed Coercive Relief

Despite the absence of any live controversy, the district court entered an order compelling Plaintiff to comply with SORNA.

That ruling cannot be reconciled with the record or with Article III.

Rather than dismissing the case for lack of jurisdiction, the court created the very dispute that Article III requires to exist beforehand.

No party sought an order requiring Plaintiff to register. Defendant asserted no counterclaim for enforcement. The pleadings did not place compliance at issue. Yet the court imposed a mandatory obligation as if adjudicating an enforcement action that did not exist.

This exceeds the constitutional limits of judicial power.

Federal courts "may not decide questions that cannot affect the rights of litigants in the case before them." *Steel Co.*, 523 U.S. at 101. Nor may they manufacture controversies in order to resolve them. See also *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007).

The court did not resolve a dispute—it created one.

Prior to the ruling, Appellant had been removed from the registry and faced no enforcement risk. Only after the court imposed compliance did Appellant become subject to registry placement, "non-compliant" designation, and threat of prosecution.

That is the exact scenario the Seventh Circuit prohibits: manufacturing jurisdiction by inflicting harm. See *MainStreet Organization of Realtors*, 505 F.3d at 745.

The court thus manufactured standing by inflicting injury.

13.

Once the dispute was extinguished, any further ruling was necessarily advisory. See *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 488 (7th Cir. 2004).

## E. The Court's Order Exceeded the Scope of the Pleadings and Violated Due Process

The error independently requires vacatur because the district court granted relief that was never requested or litigated.

This case was a defensive declaratory action seeking confirmation of Plaintiff's legal status in the absence of any live or threatened enforcement dispute. Plaintiff sought a determination of his legal status—not the imposition of obligations. Defendant did not seek affirmative relief. The action simply reflected the legal reality already established by the federal sentencing court's prior order removing any SORNA-based obligation.

Nevertheless, the court sua sponte transformed the case into an enforcement proceeding and ordered compliance with SORNA.

That action:
 Exceeded the scope of the pleadings
 Imposed relief never requested by any party
 Deprived Plaintiff of notice and an opportunity to be heard

Rule 54(c) does not authorize courts to impose coercive obligations never placed at issue. Basic due process forbids it.

## F. This Constitutional Error Requires Vacatur

This is not a close case. The record establishes:

The case presented a single legal question
 Defendant's binding admissions resolved that question
 No live controversy remained
 The district court nonetheless imposed coercive relief

Where a federal court acts in the absence of Article III jurisdiction, its judgment must be vacated.Even if a live controversy existed—which it did not—the district court still exceeded the limited jurisdiction conferred by removal.

14.

## II. The Scope of Removal Strictly Limited the Case to a Declaratory Inquiry, and the District Court Exceeded That Jurisdiction

Even setting Article III aside, the district court lacked authority to do what it did. Defendant removed this action from state court on a narrow and clearly defined basis. The civil cover sheet confirms that the case was "Removed from State Court" and invoked jurisdiction solely as a "Federal Question (U.S. Government Not a Party)." The statutes identified—28 U.S.C. § 2201 and 34 U.S.C. § 20911 et seq.—further establish that the action was framed as a declaratory judgment proceeding concerning SORNA. (A-53.)

Most importantly, the removal itself defines the precise scope of the case:

"Plaintiff's registration requirement as a sex offender under the Sex Offender Registration and Notification Act." (A-36.)

That description is dispositive. It defines not only the question presented, but the outer limit of the district court's authority. The removed case presented a single, limited question: whether any SORNA registration obligation existed. It did not seek to impose, recreate, or enforce such an obligation, nor could it. See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002) (federal jurisdiction depends on the claim as framed); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (same). Upon removal, the district court "takes the case as it finds it," and its authority is confined to the claims and issues actually removed. See Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 10–11 (1983).

Critically, Defendant did not merely pose that question—he answered it. In his Answer, Defendant Lloyd Arnold expressly admitted that, in light of the sentencing court's removal of the supervised-release condition, SORNA did not apply and no registration obligation existed. Those statements constitute binding judicial admissions. See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997). Thus, even within the narrow scope defined by removal, the only question presented had already been resolved: there was no SORNA obligation to adjudicate.

The Seventh Circuit has repeatedly enforced these limits. A removing defendant cannot expand the scope of the case or transform its nature once in federal court. See Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993) (removal does not alter the substance of the claims); BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 551 (7th Cir. 2002) (federal jurisdiction is confined to the case presented, not one reimagined after removal).

15.

The district court departed from these settled principles. Rather than resolving the only question presented—whether a SORNA obligation existed—it supplied the very obligation the sentencing court had eliminated and compelled compliance going forward.

That ruling did not interpret the scope of an existing duty; it created one.

In doing so, the court exceeded the jurisdiction conferred by removal and adjudicated a matter never placed before it.

That error is magnified by the absence of any live dispute at the time of decision. Because Defendant's binding admissions established that no obligation existed, there was no longer any concrete controversy for the court to resolve. A federal court cannot proceed to impose relief after the dispositive issue has been conceded; doing so transforms a declaratory action into an impermissible advisory ruling.

This overreach is especially acute in light of the prior federal sentencing judgment, which had already removed any SORNA-based condition. A coordinate district court has no authority to reconstruct or supplement another court's final criminal judgment in a separate civil proceeding. See United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996) (final criminal judgments are not subject to collateral revision); Peacock v. Thomas, 516 U.S. 349, 356 (1996) (ancillary jurisdiction does not permit courts to impose new obligations untethered to an existing judgment).

In short, the case that arrived in federal court asked a narrow declaratory question—one Defendant had already answered in the negative. The judgment that issued went far beyond that scope. Because the district court exceeded the limits of removal and adjudicated an issue never properly before it, its order must be vacated.

Even apart from the limits imposed by removal, vacatur is independently required because the district court's ruling contradicts and impermissibly alters the effect of a prior final federal sentencing judgment—an action beyond the authority of a coordinate court.

16.

# III. THE DISTRICT COURT LACKED AUTHORITY TO DECIDE SORNA APPLICABILITY AND ISSUED AN IMPERMISSIBLE ADVISORY OPINION IN CONTRAVENTION OF A PRIOR FEDERAL SENTENCING ORDER

The district court's ruling compelling SORNA compliance cannot be sustained. It rests on a question that another federal court—exercising core sentencing authority—explicitly declined to decide (A-43.). It was also rendered in the absence of a live Article III controversy. By resolving that question anyway, the court exceeded its authority, contradicted a final federal judgment, and issued what amounts to an advisory opinion.

---

## A. The Sentencing Court Exercised Controlling Authority and Deliberately Declined to Decide SORNA Applicability

The United States District Court presiding over Appellant's criminal case removed the SORNA compliance condition from Appellant's supervised release and expressly declined to determine whether SORNA independently applied (A-43.). That ruling was an exercise of core federal sentencing authority under 18 U.S.C. § 3583, which vests the sentencing court with exclusive authority to impose, modify, or remove conditions of supervised release.

The August 30, 2024 order striking the SORNA condition was a final exercise of sentencing authority under § 3583(e). (A-45,46.) That determination eliminated the only federal predicate for registration.

Critically, the court did not leave the issue open in a way that invited later adjudication. It resolved the only issue before it—whether SORNA compliance would be required as a condition of supervision—and concluded that it would not. At the same time, it declined to adjudicate the broader statutory question.

That combination matters.

The legal consequence was clear: no enforceable SORNA obligation existed by virtue of the federal sentence.

The sentencing court deliberately declined to determine whether SORNA applied while simultaneously removing any operative obligation. That decision—and its limits—define the legal posture of this case.

17.

A coordinate district court lacked authority to supply the omitted determination, particularly where doing so created a legal obligation where none existed. Such a ruling violates both the finality principles recognized in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), and the Article III prohibition on advisory opinions under *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

Under settled separation-of-powers principles, a coordinate federal court cannot revisit or effectively nullify the consequences of a final judgment entered by another Article III court. See *Plaut*, 514 U.S. at 227. See also *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988); *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997).

Final criminal judgments are binding and may not be collaterally revised in separate proceedings. See *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996).

The error is compounded by the fact that the sentencing court had already issued a final order eliminating the SORNA condition. That ruling—entered under 18 U.S.C. § 3583(e)—was a binding exercise of federal sentencing authority.

Yet the district court did exactly that.

It reimposed, in substance, the very obligation the sentencing court had removed.

Federal courts lack authority to resurrect extinguished obligations through collateral litigation. See *United States v. Neal*, 810 F.3d 512, 516 (7th Cir. 2016).

The resulting conflict is irreconcilable:

The sentencing court: no SORNA compliance obligation
 The district court: mandatory compliance with SORNA

That contradiction underscores the constitutional defect.

By compelling SORNA compliance notwithstanding the sentencing court's removal of that obligation, the district court effectively accomplished what it lacked authority to do directly—reimpose a condition that the sentencing court had eliminated.

## B. The District Court Improperly Supplied a Determination the Sentencing Court Declined to Make and Recreated an Extinguished Legal Obligation

The district court framed the case as presenting a "pure question of law" concerning SORNA's applicability and proceeded to answer it. That framing ignores the procedural posture created by the sentencing court's prior order.

Where a federal court with primary jurisdiction over a criminal judgment has expressly declined to decide an issue, a second district court does not acquire authority to answer that question in a separate civil proceeding—especially where doing so alters the practical effect of the original judgment.

To permit that approach would allow horizontal review of federal judgments by coordinate courts. That result is fundamentally inconsistent with the structure of Article III. See *Arizona v. California*, 460 U.S. 605, 618 (1983); *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir. 1993).

The Seventh Circuit has repeatedly emphasized that lower federal courts must respect jurisdictional limits. They may not render decisions that functionally revise or contradict prior federal rulings. See *United States v. Fischer*, 833 F.3d 796, 801 (7th Cir. 2016); *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir. 2007).

Here, the district court did not merely interpret a statute in the abstract. It supplied the very determination the sentencing court deliberately withheld. In doing so, it altered Appellant's legal obligations.

That is not interpretation—it is an impermissible revision of another court's judgment. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 227 (1995); United States v. Addonizio, 442 U.S. 178, 189–90 (1979).

The Seventh Circuit has likewise rejected attempts to alter the effect of final federal judgments through collateral proceedings. See United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996); United States v. Neal, 810 F.3d 512, 516 (7th Cir. 2016).

The August 30, 2024 order eliminated the only federal predicate for registration. Yet the district court compelled compliance with SORNA more than a year later. (A-1.)

It did not interpret an existing obligation. It recreated one.

19.

Federal courts lack authority to resurrect extinguished obligations through subsequent litigation. See *Neal*, 810 F.3d at 516.

The result is an impermissible conflict:

The sentencing court: no SORNA compliance obligation (A-45.)
 The district court: mandatory compliance with SORNA (A-15.)

That conflict cannot stand.

## C. The District Court Misapplied Article III by Relying on Voluntary Cessation, Speculation, and a Nonexistent Legal Obligation

The district court's assertion of Article III jurisdiction rests on compounding legal errors. It misapplied the voluntary cessation doctrine, relied on a "presumed" obligation, and ignored the undisputed absence of any operative duty to register. (A-49.)

Taken together, those errors confirm that no live case or controversy existed.

They also show that the court manufactured jurisdiction.

## 1. The Voluntary Cessation Doctrine Was Misapplied

The district court invoked voluntary cessation to suggest that the absence of enforcement did not defeat jurisdiction.

That is incorrect.

The doctrine applies only where a defendant voluntarily halts conduct to evade review. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000).

That is not what happened here.

Cessation resulted from a binding federal court order—not strategic behavior by a party.

## 2. The Court Relied on a "Presumed" Obligation

The district court stated that Appellant was "presumably required" to comply with SORNA.

That concession is fatal.  (A-23.)

Article III requires a definite, concrete obligation—not speculation. See *Steel Co.*, 523 U.S. at 101–02; *MedImmune*, 549 U.S. at 127.

## 3. The Timeline Confirms No Live Controversy

Following Judge Moody's order:

Appellant was removed from the registry
No registration obligation was enforced
No court had ruled SORNA applied

Only after Judge Lund's order was Appellant placed back on the registry.

This proves the obligation did not exist before her ruling.

## 4. The Court Manufactured Jurisdiction

The district court justified jurisdiction based on a risk that existed only because the legal issue was unresolved—then resolved it by imposing a legal obligation.

That reasoning is circular. It is also unconstitutional. Federal courts may resolve disputes. They may not create them. See *Steel Co.*, 523 U.S. at 101–02.

## D. The Judgment Must Be Vacated

Because the district court (1) exceeded its authority, (2) improperly supplied a determination another court declined to make, and (3) acted without a live controversy, its judgment cannot stand.

The proper remedy is vacatur. See *Steel Co.*, 523 U.S. at 94–95; *MedImmune*, 549 U.S. at 127. Allowing the judgment to remain would sanction advisory adjudication and undermine the finality of federal judgments.

# IV. THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION BECAUSE THE NAMED DEFENDANT HAS NO ENFORCEMENT AUTHORITY, AND THE COURT ERRED IN TREATING THIS STRUCTURAL DEFECT AS "WAIVED"

The district court's exercise of jurisdiction independently fails under the Eleventh Amendment because the sole named defendant—Commissioner Lloyd Arnold—lacks any enforcement authority over sex-offender registration. This defect is dispositive, jurisdictional, and non-waivable.

## A. Seventh Circuit Law Strictly Requires a Concrete Enforcement Connection Under Ex parte Young

The Eleventh Amendment bars suits against state officials unless the narrow exception recognized in Ex parte Young applies. That exception permits prospective relief only against officials who possess a specific, non-generalized connection to enforcement of the challenged law.

The Seventh Circuit has repeatedly emphasized that this requirement is rigorous and jurisdictional:

- In Sweeney v. Raoul, the court held that a proper defendant must have "some connection with the enforcement of the act" and that a generalized duty to enforce state law is insufficient.
- In Hearne v. Board of Education of City of Chicago, the court rejected jurisdiction where the named official lacked authority to provide the requested relief.
- In Indiana Protection & Advocacy Services v. Indiana Family & Social Services Administration, the court reaffirmed that Ex parte Young applies only where the official has a direct role in enforcing or administering the challenged statutory scheme.

Most recently, the Seventh Circuit has reiterated that the inquiry is functional: can this official actually enforce or stop the challenged conduct? If not, the suit is barred.

Here, the answer is unequivocally no.

22.

Indiana's sex-offender registration regime is enforced by local law enforcement—primarily county sheriffs—not the Commissioner of the Indiana Department of Correction. The Commissioner:

- Does not compel registration;
- Does not maintain or control the registry in a manner relevant to enforcement;
- Does not initiate prosecutions or arrests for noncompliance.

Because Defendant Arnold lacks any enforcement authority, he is not a proper Ex parte Young defendant under binding Seventh Circuit precedent.

## B. The District Court Effectively Acknowledged the Defendant Was Improper

The district court did not identify any enforcement authority connecting Defendant Arnold to the alleged injury. Instead, it acknowledged Plaintiff's argument that Arnold lacks such authority.

Critically, the court did not refute this point on the merits. It did not cite a statute. It did not identify any enforcement mechanism.

Instead, the court dismissed the issue as procedurally forfeited, stating the argument "was never raised at any prior point in the proceedings" and was therefore "waived." (A-23.)

That reasoning cannot be reconciled with controlling law.

## C. Seventh Circuit Precedent Confirms That This Jurisdictional Defect Cannot Be Waived

The Seventh Circuit has been unequivocal: subject-matter jurisdiction and sovereign immunity are not subject to waiver or forfeiture.

- In Hay v. Indiana State Board of Tax Commissioners, the court held that Eleventh Amendment immunity "partakes of the nature of a jurisdictional bar" and must be addressed whenever it appears.
- In Mays v. Dart, the court emphasized that federal courts have an independent obligation to ensure that jurisdiction exists before proceeding.
- In Franklin v. Zaruba, the court rejected claims against officials who lacked authority to provide relief, underscoring that improper defendants cannot sustain federal jurisdiction.

This principle aligns with Supreme Court precedent holding that jurisdiction "can never be forfeited or waived." United States v. Cotton.

Thus, even if the issue had not been raised earlier (and it was, in substance), the district court was independently obligated to resolve it.

Instead, the court inverted the law—treating a threshold jurisdictional defect as a discretionary argument subject to waiver.

That error warrants vacatur of the judgment.

## D. The Error Is Structural Under Seventh Circuit Law

The Seventh Circuit treats improper Ex parte Young defendants as a fatal jurisdictional defect, not a technical pleading issue.

Where the named official cannot enforce the challenged law:

- The suit is effectively against the State itself;
- Sovereign immunity applies in full;
- Federal courts lack authority to grant relief.

See, e.g., Council 31 of the American Federation of State, County, and Municipal Employees v. Quinn (recognizing limits of Ex parte Young and reaffirming sovereign immunity as a structural constraint).

Here, the district court proceeded to:

1. Adjudicate federal rights;
2. Enter declaratory relief; and
3. Compel compliance with a federal statute

—all against an official who lacks any enforcement role.

Under Seventh Circuit law, that is not merely incorrect—it is ultra vires.

**E. This Defect Independently Requires Vacatur**

Because Defendant Arnold is not a proper Ex parte Young defendant, sovereign immunity bars this action in its entirety.

The Seventh Circuit's remedy in such circumstances is clear: vacatur and dismissal for lack of jurisdiction.

This conclusion is independent of—and in addition to—the Article III and jurisdictional defects addressed elsewhere in this brief.

# CONCLUSION

Because the district court acted in the absence of Article III jurisdiction and beyond the limits of its authority, its judgment is void.

This Court should:

1. VACATE the judgment;
2. REMAND with instructions to dismiss for lack of jurisdiction.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains approximately 5,972 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

---

# CERTIFICATE OF SERVICE

I certify that on *April 2, 2026*, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

---

# SIGNATURE

Respectfully submitted,

/s/ *Montell Williams*

Montell Williams
Plaintiff–Appellant, pro se

6626 Nebraska Ave, Apt 2A
Hammond, Indiana 46323
(219) 214-1619

Date: *April 2 2026*

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

U.S.C.A. – 7th Circuit
RECEIVED

APR 0 2 2026

Montell Williams,
   Plaintiff–Appellant,

v.

Lloyd Arnold, in his official capacity
as Commissioner of the Indiana Department of Correction,
   Defendant–Appellee.

Appeal No. 26-1014


# APPENDIX OF PLAINTIFF–APPELLANT

# APPENDIX TABLE OF CONTENTS

District Court Opinion and Order
(Dec. 15, 2025) ..................................................... A-1

Order Denying Motion for Stay Pending Appeal
(Jan. 30, 2026) .................................................... A-16

Emergency Motion for Stay Pending Appeal
(Jan. 5, 2026) ..................................................... A-26

Complaint for Declaratory Judgment ................................. A-31

Notice of Removal .................................................. A-35

Sentencing Modification Order (Aug. 30, 2024) ...................... A-39

Defendant's Answer, Affirmative Defenses,
and Demand for Jury ............................................... A-47

Civil Cover Sheet ................................................. A-53

Federal Probation Communication from Peter Sgroi
(Dec. 30, 2025) ................................................... A-54

# APPENDIX DOCUMENT 1

District Court Opinion and Order
December 15, 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MONTELL WILLIAMS,

    Plaintiff,

    v.

LLOYD ARNOLD,

    Defendant.

Case No. 2:25-CV-108-GSL-APR

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 14]. The Motion has been fully briefed [DE 15, 21–22], oral argument was heard on October 1, 2025 [DE 24], and the Motion is now ripe for ruling. In addition, Plaintiff requested in both his response brief [DE 21] and at the oral hearing [DE 24] that Defendant's Motion be converted into a motion for summary judgment. For the reasons below, the Court **DENIES** Plaintiff's request to convert the Motion into one for summary judgment [DE 21, 24] and **GRANTS** Defendant's Motion [DE 14].

## BACKGROUND

*Factual Background*

In January 2013, under Cause No. 2:12-cr-144, Plaintiff Montell Williams pled guilty to Count 3 of the superseding indictment for transporting an individual in interstate commerce with intent that such individual engage in prostitution, a violation of 18 U.S.C. § 2421. [DE 4, ₱ 3; DE 4-1 at 3, ₱ 7a]. Plaintiff was initially sentenced to a 120-month term of imprisonment with eight years of supervised release upon his release from custody. [DE 4, ₱ 5; DE 4-1 at 9–10]. Following an appeal to and subsequent remand from the Seventh Circuit, in which Plaintiff

A-1

challenged two conditions of his supervised release [DE 4-1 at 15], Plaintiff was resentenced to a 120-month term of imprisonment and a lifetime term of supervised release. [DE 4, ¶¶ 5–6; DE 4-1 at 17–18]. As a mandatory condition of his supervised release, Plaintiff was ordered to comply with the Sex Offender Registration and Notification Act (SORNA).[1] [DE 4, ¶ 7; DE 4-1 at 18].

Following Plaintiff's release from custody in 2020, Plaintiff was required to register as a sex offender in Indiana. [DE 4, ¶¶ 8–9]. In 2022, Plaintiff moved to modify the conditions of his supervised release.[2] [DE 4, ¶10; DE 14-5]. Although Plaintiff initially based his argument on the premise that SORNA did not apply to him, he later clarified that he did not seek a determination on SORNA's applicability and instead sought only to strike the condition that he comply with SORNA. [DE 4-1 at 29]. In 2024, the district court granted Plaintiff's motion and removed the condition that Plaintiff comply with SORNA's registration requirements. [*Id.* at 33–34].

*Procedural Background*

Following the district court's removal of the SORNA compliance condition, Plaintiff thereafter filed a declaratory judgment action against Defendant Lloyd Arnold in state court under Cause No. 45D10-2502-MI-59. [DE 1, DE 4 at 4]. Plaintiff specifically sought a declaration that he is not a sex offender, that he does not have an obligation to register as a sex offender in Indiana, and that he should be removed from the Department of Corrections' Sex

---

[1] The mandatory condition that Plaintiff register as a sex offender was initially agreed upon in Plaintiff's plea agreement. [*See* DE 4-1 at 4, ¶ 7(d)(iv) ("The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. § 16913.")]. This condition was then imposed as part of Plaintiff's initial eight-year term of supervised release, although it was not specified whether the condition was mandatory or discretionary. [*See id.* at 10 ("The defendant shall comply with the requirements of [SORNA] (42 U.S.C. § 16901, *et seq.*) . . . .")]. Following the remand from the Seventh Circuit [*id.* at 15], the sex offender registration requirement was reimposed as a mandatory condition of Plaintiff's revised lifetime term of supervised release. [*See id.* at 18, ¶ 3].

[2] Along with seeking a modification of the conditions of his supervised release, Plaintiff also sought to modify the duration of his supervised release. [DE 14-5]. The district court denied this portion of Plaintiff's motion. [*See* DE 4-1 at 33]. Plaintiff has raised no further challenges to the duration of his supervised release under this action.

2

Offender Registry. [DE 4 at 4]. The case was subsequently removed from the Lake County Superior Court to this Court. [DE 1]. After answering Plaintiff's Complaint [DE 12], Defendant filed his Motion for Judgment on the Pleadings [DE 14]. Oral argument on Defendant's Motion was held on October 1, 2025. [DE 24]. The Motion has been fully briefed and is now ripe for ruling. [DE 15, 21–22]. Plaintiff has also requested that Defendant's Motion be converted into a motion for summary judgment. [DE 21, 24]. The Court will address both Plaintiff's request and Defendant's Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Federated Mut. Ins. v. Coyle Mech. Supply Co.*, 983 F.3d 307, 312 (7th Cir. 2020) (quoting Fed. R. Civ. P. 12(c)). Rule 12(c) motions may be raised by either party "to dispose of the case on the basis of the underlying substantive merits." *Wolf v. Riverport Ins.*, 132 F.4th 515, 518 (7th Cir. 2025). When a Rule 12(c) motion is filed to challenge the sufficiency of a complaint—as Defendant did here—the motion performs the same function as a Rule 12(b)(6) motion to dismiss and is thus governed by the same standard. *Id.* The only difference between the two is timing. *See Coyle*, 983 F.3d at 313; 5C Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed. 2019) (providing that a party "cannot move under Rule 12(c) until after an answer has been filed").

"When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Coyle*, 983 F.3d at 313 (quoting *Scottsdale Ins. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). In essence, this means that the movant must demonstrate not only the absence of any material issues of fact to be resolved,

3

A-3

*see id.*, but also that the plaintiff's complaint fails to meet the plausibility standard—i.e., that the plaintiff has not stated a recognizable legal claim. *See Wolf*, 132 F.4th at 519. As with a motion to dismiss under Rule 12(b)(6), well-pled factual allegations in the complaint are accepted as true and the Court will view all facts and inferences in the light most favorable to the non-moving party. *Id.*; *Coyle*, 983 F.3d at 313 (citing *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993)).

## DISCUSSION

### I.     Plaintiff's Conversion Request [DE 21, 24]

Before proceeding to the merits of Defendant's 12(c) Motion, the Court must first address Plaintiff's request to convert the motion into one for summary judgment under Rule 56. [*See* DE 21 at 1, DE 24]. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

*Coyle*, 983 F.3d at 313 (quoting Fed. R. Civ. P. 12(d)). A district court has discretion over whether a Rule 12(c) motion should be converted into a Rule 56 motion for summary judgment. *Id.* If the court chooses to consider materials outside the pleadings, however, then "the discretion ends, and the court 'must' treat the motion as one for summary judgment." *Id.* (citing Fed. R. Civ. P. 12(d) and *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002)).

Generally, "pleadings" for purposes of a Rule 12(c) motion "include the complaint, the answer, and any written instruments attached as exhibits." *Id.* at 312 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Yet an exception to this rule exists in which a court may also "take into consideration documents incorporated by reference to the pleadings," as well as "take judicial notice of matters of public record."

4

A-4

*Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2025) (explaining that courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment under Rule 12(d)"). A court may take judicial notice of an adjudicative fact "that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)).

Here, Defendant attached six exhibits to his 12(c) Motion, each deriving from Plaintiff's underlying criminal matter in Cause No. 2:12-cr-144. [*See* DE 14-1 (Superseding Indictment), 14-2 (Plea Agreement), 14-3 (Judgment in a Criminal Case), 14-4 (Judgment in a Criminal Case), 14-5 (Motion to Modify Conditions of Supervised Released), and 14-6 (Opinion and Order)]. Defendant requests that each of these exhibits be judicially noticed as matters of public record whose accuracy cannot be reasonably questioned. [*See* DE 14 at 2 n.1 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); DE 22 at 2–3]. First, four of the six exhibits (Plea Agreement, 2012 Judgment in a Criminal Case, 2016 Judgment in a Criminal Case, and Opinion and Order) are the same as those attached to Plaintiff's Complaint. [*See generally* DE 4-1]. Second, each of these exhibits appear to be central to the Complaint and the allegations contained within it. Finally, each of these exhibits are matters of public record. Thus, it seems permissible for the Court to take judicial notice of and or consider them as part of the

5

A-5

pleadings for the Rule 12(c) analysis. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (explaining that for purposes of a Rule 12(b)(6) or 12(c) motion, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

Plaintiff does not appear to contest that these exhibits are public records, nor does Plaintiff offer any argument suggesting their accuracy is in dispute. [*See* DE 21 at 1]. Rather, Plaintiff appears to imply—as a rule of thumb—that Defendant's decision to attach *any* exhibits automatically dictates the need to convert the motion into one for summary judgment. [*Id.*]. This is not the case though. *See Flynn*, 863 F.3d at 640. Defendant's exhibits cleanly fit the criteria for judicial notice under Federal Rule of Evidence 201: they are publicly available, they are not factually disputed, and they derive from sources whose accuracy cannot reasonably be questioned. *See Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2022); *Henson*, 29 F.3d at 284 (affirming district court's consideration of public court documents from earlier state case in deciding defendants' motion to dismiss). Thus, the Court takes judicial notice of Defendant's attached exhibits. [*See* DE 14-1 through 14-6].

Accordingly, because none of Defendant's exhibits are "matters outside the pleadings," *see* Fed. R. Civ. P. 12(d), the Court declines to convert Defendant's Rule 12(c) Motion into one for summary judgment.

## II.    Defendant's Rule 12(c) Motion [DE 14]

Turning to the merits of Defendant's 12(c) Motion, Defendant asserts that Plaintiff is not entitled to the relief he seeks based on SORNA's statutory language. Plaintiff's Complaint, and

thus Defendant's Motion, both concern the applicability of the sex offender registry requirements within SORNA.

In 2006, Congress enacted SORNA to make "more uniform and effective" the "patchwork" of previously implemented state sex-offender registration systems. *Gundy v. United States*, 588 U.S. 128, 132 (2019); *see* 34 U.S.C. § 20901 *et seq.* (formerly codified as 42 U.S.C. § 16901 *et seq.*). The express purpose of SORNA is "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for [their] registration." *Id.* at 133 (quoting § 20901). SORNA defines a "sex offender" as "an individual who was convicted of" certain specified crimes, in particular, any offense "involving a sexual act or sexual contact" as well as offenses "against a minor." *Id.* (quoting 34 U.S.C. §§ 20911(1), (5)(A), (7)). According to SORNA's registration scheme, any individual deemed a "sex offender" is required to register in every state where he or she resides, works, or studies by providing certain statutorily mandated information. *See id.* (citing §§ 20913(a), 20914). Further, the registration must be kept current, thus requiring periodic in-person reporting to a law enforcement office, for a period ranging from fifteen years to life based on the severity of the underlying crime. *Id.* (citing §§ 20915, 20918).

Plaintiff brought this action seeking a declaration that (1) SORNA does not apply to him and (2) he need not register as a sex offender in the State of Indiana. [DE 4, ¶¶ 12, 17]. In his Complaint, Plaintiff based the belief that SORNA is inapplicable on the grounds that he (a) is no longer required to comply with SORNA's registration requirements as a condition of his supervised release and (b) was not convicted of a qualifying "sex offense" that would otherwise require him to register as a sex offender. [*Id.*, ¶¶ 12–13, 15, 17]. Thus, given Plaintiff's assertion, Defendant framed the main focus of his 12(c) Motion as follows: "Based on the allegations in the

complaint, the Court is faced with a pure question of law: whether Congress intended for sex offenses under 34 U.S.C. § 20911(5)(ii), including violations of 18 U.S.C. § 2421, to fall within the exception to a registrable sex offense under SORNA." [DE 15 at 5]. Agreeing with Defendant's framing of the issue, Plaintiff similarly framed the question as "whether [Plaintiff's] conviction for transporting an individual in interstate commerce with intent to engage in prostitution in violation of 18 U.S.C. § 2421 is a sex offense under 34 U.S.C. § 20911 . . . ." [DE 21 at 2]. Therefore, taken together, the central issue is one of statutory interpretation concerning the term "sex offense."

Statutory analysis "begins with the text," *Ross v. Black*, 578 U.S. 632, 638 (2016), and unless a term is otherwise defined by Congress, the Court will look to the text's "ordinary, contemporary, common meaning." *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 498 (7th Cir. 2025) (quoting *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023)). "Absent clearly expressed Congressional intent to the contrary, the plain language should be conclusive." *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). Moreover, a statute should be read to avoid "render[ing] a word or phrase redundant or meaningless." *Id.* at 396–97 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574–75 (1995)). Finally, statutory provisions should not be read in isolation as "a fair reading of legislation demands a fair understanding of the legislative plan," *King v. Burwell*, 576 U.S. 473, 498 (2015), and thus the statute's words "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

SORNA defines "sex offense," in relevant part, as follows:

Except as limited by subparagraph (B) or (C), the term 'sex offense' means

. . .

A-8

iii.    a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18[.]

§ 20911(5)(A). As alluded to in Subsection (A), Subsections (B) and (C) provide exceptions to a registrable sex offense. Relevant here, Subsection (C) states:

> An offense involving **consensual sexual conduct** is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

§ 20911(5)(C) (emphasis added).

Here, Defendant essentially argues that because Plaintiff's underlying criminal conviction for violating § 2421—an offense within Chapter 117 of Title 18—is a specifically included federal offense under Subsection (5)(A)(iii), the plain language of Subsection (A) indicates that Congress did not intend for Subsection (C)'s exception to apply.[3] [DE 15 at 14]. In contrast, Plaintiff argues that the plain language of Subsection (A), particularly that stating "[e]xcept as limited by subparagraphs (B) or (C)," shows an intent by Congress to limit the definition of " sex offense" and that it does not matter whether his underlying conviction is a specifically included

---

[3] Defendant goes on to provide additional purpose, history, and context grounds for why the adoption of Plaintiff's proposed interpretation would lead to illogical results. First, Defendant argues that when considering Plaintiff's specific underlying conviction, there is always the possibility that either no sexual activity took place or that only an attempt was made, thereby permitting *some* individuals but not others to take advantage of the exception under Subsection (C) despite committing the same offense. [DE 15 at 15 (citing *United State v. Rodriguez*, 460 F. Supp. 2d 902, 909 (S.D. Ind. 2006) ("Courts will look beyond the text of a statute only when the meaning of the language is not plain, the statutory context or structure as a whole reveals an ambiguity, or giving effect to the plain meaning will lead to illogical and absurd results."))]. Second, Defendant argues that the legislative history indicates an unequivocal showing that Subsection (C)'s exception was only intended for the first two definitions under Subsection (A). [*Id.* at 16]. In support, Defendant relies on a Tenth Circuit decision which found that the only references to the term "consensual sexual conduct" in the legislative history addressed consensual sexual conduct between juveniles and consensual sexual conduct between adults previously criminalized by state sodomy laws. *See United States v. Alexander*, 802 F.3d 1134, 1139 (10th Cir. 2015) (citing 152 Cong. Rec. H5705–01, at 5723–24 (daily ed. July 25, 20060, H.R. Rep. No. 105–256, at 40–41 (Sept. 18, 1997)). The Court notes these arguments but finds that because the issue is properly resolved upon the statute's plain text alone, the Court need not address these arguments further.

A-9

offense so long as one of the two exceptions apply. [DE 21 at 3]. Plaintiff further argues that under Subsection (C), his conduct was "consensual," thereby qualifying him for the exception.

To begin, it is true that § 2421 is a specifically included offense under Subsection (5)(A)(iii), and thus its inclusion would ordinarily qualify it as a sex offense absent an applicable exception.[4] Defendant's reading appears to assume, however, that the statute's mere inclusion under Subsection (5)(A)(iii) automatically ends the inquiry there. This disregards the opening language of Subsection (A) which, as Plaintiff rightfully points out, would override Defendant's interpretation when either Subsection (B) or (C) applies. As a result, the Court must therefore turn to the language of the relevant exception under Subsection (C) to determine whether Plaintiff's conduct qualifies. And because neither party is arguing the victim in the underlying criminal conviction was either a minor or an adult under Plaintiff's custodial authority at the time of the offense, the only relevant issue for the Court to analyze is whether Plaintiff was convicted of "[a]n offense involving **consensual sexual conduct**." § 20911(5)(C) (emphasis added).

Here, Plaintiff argues for a strict textualist reading of Subsection (C) and focuses extensively on the term "consensual." [DE 21 at 4–5]. To this end, he makes two arguments. First, he asserts that he qualifies for the exception because nothing in the indictment, the plea agreement, the plea colloquy, or any other entry from the underlying criminal matter was offered to prove his conduct was non-consensual which, according to Plaintiff, means his conduct had to have been consensual. [DE 21 at 5]. Second, Plaintiff argues that the phrase "consensual sexual conduct"—particularly "conduct"—should be read broadly, and that because the victim in the

---

[4] Because Plaintiff's underlying criminal conviction is for a specifically listed offense under Subsection (5)(A)(iii), the Court need not address which analytical framework—the categorical approach, the modified categorial approach, or the circumstance-specific approach—is most appropriate for deciding whether an individual has met SORNA's definition of a "sex offense." [DE 15 at 7; DE 21 at 4]. *See United States v. Thayer*, 40 F.4th 797,800 (7th Cir. 2022). As Defendant notes, that is because these frameworks are used for determining whether predicate state crimes may otherwise qualify as a "sex offense" under SORNA. [DE 15 at 9 (citing *id.*)]. But where the offense is already a qualifying sex offense, no purpose is served in engaging in such an analysis.

underlying criminal matter engaged in consensual sex with others, Plaintiff is therefore entitled to Subsection (C)'s exception. [*See* DE 28 at 13:15–21, 18:21–22]. There are, however, a few glaring issues with Plaintiff's construction.

First, Plaintiff's reading assumes that evidence going toward consent is a prerequisite showing that the Government must proffer. [*See* DE 28 at 25:1–20]. As Defendant notes, though, the nature of Plaintiff's criminal conviction under § 2421, which involves "transport[ing] any individual . . . with intent that such individual engage in prostitution, or in any sexual activity . . . or attempts to do so," *see* § 2421(a), does not require proof of consent, and thus there would not be a basis to support a determination that Plaintiff's conduct was "consensual." [DE 15 at 14–15]. Likewise, the overwhelming majority of included offenses listed within Subsection (5)(A)(iii) do not require proof of consent, and those few that do may only require proof of consent to the degree that it concerns any elements of coercion. *See, e.g.*, 18 U.S.C. §§ 1591, 2241, 2242, 2422 (requiring proof of coercion, intimidation, or enticement). Thus, to accept Plaintiff's construction would be to impose an onerous burden upon the Government to proffer evidence of consent when consent is often irrelevant to the underlying charge. Moreover, requiring the government to prove the applicability of a statutory provision or safe harbor that its opponent, and not itself, wishes to invoke invariably seems counter-intuitive. *Cf., e.g., Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017) (noting that for violations of the autodialing prohibition under the Telephone Consumer Protection Act, the defendant bears the burden of proving the affirmative defense of "express consent"); *United States v. Acevedo-Fitz*, 739 F.3d 967, 972 (7th Cir. 2014) (explaining that the defendant bears the burden of satisfying the statutory criteria necessary to qualify for the safety valve provision under 18 U.S.C. § 3553(f), and that the defendant's burden cannot be met "if the government challenges the 'truthfulness,

11

accuracy, or completeness' of his information and he 'does not produce anything to persuade the district court that his submissions are truthful and complete'").[5]

Even more notable, though, is that this construction—stating the failure to offer proof of non-consent equates to a demonstration that the conduct is therefore consensual—would result in a wrecking ball sized hole in the statute permitting any individual to take advantage of the exception simply by pointing out this perceived design flaw. Not only is this approach impractical, but it goes against SORNA's express purpose. *See* § 20901 (stating that the purpose of SORNA is "to protect the public from sex offenders and offenders against children"); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 482 (7th Cir. 2024) (alteration omitted) (quoting *King v. Burwell*, 576 U.S. 473, 493 (2015) (providing that "we cannot interpret federal statutes to negate their own stated purposes"). And although Plaintiff is likely correct that Congress sought to limit the definition of "sex offense" by offering a consent-based exception, the decision to include numerous offenses not requiring proof of consent as qualifying "sex offenses," as well as the decision not to impose an express burden upon the Government to offer such proof, strongly suggests Congress never intended the limitation to extend as far as Plaintiff claims. *See Supervalu, Inc. v. United Food and Com. Workers Union and Emps. Midwest Pension Fund*, 155 F.4th 913, 926 (7th Cir. 2025) (quoting *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025) ("Courts must 'read' a statute 'the way Congress wrote it.'").

Second, as stated above, Plaintiff argues that the phrase "consensual sexual conduct"— particularly "conduct"—should be interpreted broadly, and that because the victim in the

---

[5] As the Court noted during the motion hearing [*see* DE 24], there is also an issue of waiver surrounding the request that the Government offer proof of consent, particularly where the Government did not seek to do so during Plaintiff's initial sentencing in 2013 or during his resentencing in 2016. [*See* DE 28 at 26:17–28:8]. It is unclear from the Court's perspective that it would be procedurally proper to revisit an unaddressed issue that has dwelt undisturbed for this long.

underlying criminal matter engaged in consensual sex with others, Plaintiff should qualify for Subsection (C)'s exception. [*See* DE 28 at 13:15–21, 18:21–22]. As a reminder, Subsection (C) states, "An offense **involving consensual sexual conduct** is not a sex offense for purposes of this subchapter **if the victim was an adult**[.]" § 20911(5)(C) (emphasis added). Here, Plaintiff's conviction under § 2421 was for "**transport[ing] an[] individual** in interstate or foreign commerce . . . **with intent that such individual engage in prostitution, or in any sexual activity** for which any person can be charged with a criminal offense, or attempts to do so . . . ." *See* § 2421(a) (emphasis added). Put another way, the conduct being charged is not for engaging in sexual activity, but for *transporting another with the intent that the "other" individual engage in sexual activity*. This is crucial because the language of Subsection (C) suggests three things: (1) sexual conduct was integral to the underlying offense—"an offense *involving* sexual conduct"; (2) the individual convicted of the offense was himself engaged in some form of sexual activity; and (3) the individual engaged in said sexual activity with the victim. Applying this to Plaintiff, it cannot be said that the offense for which Plaintiff was convicted involved "sexual conduct."

Nowhere in the parties' briefing or in the underlying criminal conviction though is it shown that Plaintiff had sex with the victim; only that he transported the victim for her to then have sex with others. Further, nowhere in the sources relied upon by the parties or the Court is it suggested that the act of "transporting" is sexual per se. To suggest otherwise would, in earnest, be nonsensical.[6] Finally, the underlying offense does not actually require sexual activity to occur, only that the convicted transporter *intend* for such activity to take place. Where Congress

---

[6] To put it differently, one would not conclude that a contractor, through the act of constructing a brothel, engages in sexual conduct, even if sexual activity was to occur within the brothel. If the contractor does not engage in a sexual act himself—that is, an act of intercourse, his conduct cannot be sexual.

explicitly requires that the offense "involve consensual sexual conduct," and the defendant was convicted for an offense where there ultimately was no sexual activity taking place, it seems illogical to conclude that the exception would apply.

To rectify this issue, Plaintiff asserts that "conduct" should be read broadly. [DE 28 at 18:21–22]. Plaintiff argues that sexual conduct is not a specific act but is instead more encompassing, and that the "conduct of transporting somebody for purposes of prostitution, prostitution being sexual in nature, . . . would fall under the exception of sexual conduct." [*Id.* at 19:9–16; *see also id.* at 20:18–20 ("I do not believe . . . that Congress intended that conduct only be limited to an act, a sexual act of rape, of intercourse, of sodomy, of deviate conduct. I believe it is more encompassing than that.")]. But no citations supporting such an interpretation, however, have been offered to the Court. Nor is it clear for the reasons discussed above that Congress intended for "conduct" to be read as broadly as Plaintiff asserts. For an act to be "sexual" within the confines of its plain and ordinary meaning, it must in some way involve sexual intercourse, whether verbally, sensually, or physically.[7] Thus, to read "conduct" in the

---

[7] Congress did not define "sexual conduct," so the Court may look to extrinsic sources for guidance in determining the term's plain and ordinary meaning. *See United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) (noting that courts often look to dictionary definitions and supporting or analogous statutory provisions when interpreting an undefined term). General dictionaries define "sexual" as "having or involving sex." *Sexual*, MERRIAM-WEBSTER, SEXUAL Definition & Meaning - Merriam-Webster (last visited Dec. 15, 2025); *see also Sexual*, DICTIONARY.COM, SEXUAL Definition & Meaning | Dictionary.com (defining "sexual" as "of, relating to, or for sex") (last visited Dec. 15, 2025). "Conduct" is generally defined as an action or way of acting. *See Conduct*, MERRIAM-WEBSTER, CONDUCT Definition & Meaning - Merriam-Webster (defining "conduct" as "an act or omission to act") (last visited Dec. 15, 2025); *Conduct*, DICTIONARY.COM, CONDUCT Definition & Meaning | Dictionary.com (defining "conduct" as "personal behavior; way of acting; bearing or deportment") (last visited Dec. 15, 2025). Thus, when taken together, "sexual conduct" can be interpreted as the act of engaging in sexual intercourse or any verbal, sensual, or physical act or behavior involving sex. *Cf. Sexual Relations*, Black's Law Dictionary (12th ed. 2024) (defining "sexual relations" as "[s]exual intercourse" or "[p]hysical sexual activity that does not necessarily culminate in intercourse . . . usu[ally] involve[s] the touching of another's breast, vagina, penis, or anus"). Likewise, analogous statutory definitions lead to the same result. In further defining the first definition of a "sex offense" under Subsection (5)(A)(i), 18 U.S.C. § 2246(2) defines a "sexual act" as involving contact with or penetration of the penis, vulva, genitals, or anus, whilst § 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person . . . ." Finally, 18 U.S.C. § 2256(2)(A) defines the similarly worded phrase "sexually explicit conduct" as "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal . . . ; (ii) bestiality; [and] (iii) masturbation[.]"

14

broad and proximate manner that Plaintiff prescribes would inevitably downplay or outright eliminate the requirement that the ultimate act be "sexual." *See Berkos*, 543 F.3d at 396–97 (explaining that a statute should be read so as to avoid "render[ing] a word or phrase redundant or meaningless").

Plaintiff has therefore not demonstrated that he was convicted of an offense "involving consensual sexual conduct," *see* § 20911(5)(C), nor has he shown that he qualifies for an exception to an otherwise registrable "sex offense" as defined by Subsection (A). Accordingly, Plaintiff's claim for declaratory relief that he need not register as a sex offender fails as a matter of law. Judgment on the pleadings in favor of Defendant is therefore warranted.[8]

## CONCLUSION

For all of these reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings [DE 14] and **DENIES** Plaintiff's request to convert Defendant's Motion into a motion for summary judgment [DE 21, 24]. The Court hereby ORDERS immediately and moving forward, Plaintiff **COMPLY** with SORNA's sex-offender registration requirements.

SO ORDERED.

ENTERED: December 15, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court

---

[8] Because the Court finds that Plaintiff was convicted of a qualifying sex offense under Subsection (5)(A)(iii) and is not otherwise exempt from registration under § 20911(5)(C), the Court need not address Defendant's alternative argument that Plaintiff be required to register under Indiana state law. [*See* DE 15 at 20].

15

A-15

# APPENDIX DOCUMENT 2

Order Denying Motion for Stay Pending Appeal
January 30, 2026

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MONTELL WILLIAMS,

    Plaintiff,

    v.

LLOYD ARNOLD,

    Defendant.

Case No. 2:25-CV-108-GSL-APR

## OPINION AND ORDER

This matter is before the Court on Plaintiff Montell Williams' Emergency Motion for Stay Pending Appeal [DE 31], in which Plaintiff seeks a stay of the Court's Opinion and Order [DE 29] requiring Plaintiff's compliance with the sex offender registration requirements under the Sex Offender and Registration and Notification Act (SORNA). For the reasons below, the Court **CONFIRMS** the Opinion and Order entered on December 15, 2025 [DE 29], **DENIES** Plaintiff's Motion to Stay, and notifies Plaintiff that any further relief must come from the Seventh Circuit Court of Appeals.

## BACKGROUND

A brief synopsis of this case's facts are as follows.[1] In 2013, under Cause No. 2:12-cr-144, Plaintiff pled guilty to violating 18 U.S.C. § 2421, which involves transporting an individual in interstate commerce with intent that such individual engage in prostitution. Following two sentencings and an appeal to the Seventh Circuit, Plaintiff was ultimately given 120 months of imprisonment and a lifetime term of supervised release. A condition of his

---

[1] A full and detailed layout of both the factual and procedural background can be found in the Court's Opinion and Order, entered on December 15, 2025. [*See* DE 29 at 1–3].

A-16

supervised release required that he comply with the sex offender registration requirements under SORNA.

In 2022, Plaintiff moved to modify the conditions of his supervised release, specifically the condition requiring compliance with SORNA. As the district court noted in its order addressing Plaintiff's motion for modification [DE 14-6 at 3], Plaintiff's request was initially premised on the basis that SORNA was inapplicable to him, highlighting the "consensual sexual conduct" exception he would later invoke in the current matter. Plaintiff, however, clarified that he did not seek a clarification on SORNA's applicability and instead sought only to strike the compliance requirement from his supervised release [*Id.*]. The district court granted Plaintiff's motion and removed the compliance condition from his supervised release, leaving the question of SORNA's applicability unanswered given Plaintiff's withdrawal of that argument.

In 2025, Plaintiff initiated this action seeking a declaratory judgment that (1) SORNA does not apply to him, (2) he need not register as a sex offender, and (3) he should be removed from the Indiana Sex Offender Registry. [DE 4, ¶¶ 12, 17]. Plaintiff named Lloyd Arnold, in his official capacity as Commissioner of the Indiana Department of Corrections, as the defendant. After answering Plaintiff's Complaint, Defendant Arnold moved for judgment on the pleadings [DE 14], arguing that Plaintiff 's conviction under § 2421 was a qualifying "sex offense" as defined by 34 U.S.C. § 20911(5)(A)(iii) and that Plaintiff was required to register as a sex offender. Plaintiff countered that he was not convicted of a sex offense because his conviction fell within an exception under § 20911(5)(C) for "offense[s] involving consensual sexual conduct." The Court then engaged in an exercise of statutory interpretation regarding the term "sex offense" and, after finding Plaintiff's underlying conviction was a qualifying sex offense and that the underlying offense was not one "involving consensual sexual conduct" as necessary

to invoke the exception, the Court determined Defendant Arnold was entitled to judgment in his favor. [DE 29 at 15]. And because the Court held that SORNA—which requires registration, *see* 34 U.S.C. §§20913–20915—was applicable to Plaintiff as a sex offender, the Court further ordered that Plaintiff comply with SORNA's sex offender registration requirements. [*Id.*].

On January 5, 2026, Plaintiff filed both his Emergency Motion for Stay Pending Appeal [DE 31], and immediately thereafter his Notice of Appeal [DE 32], both of which challenge the Court's decision granting Defendant Lloyd Arnold's Motion for Judgment on the Pleadings [DE 14; DE 29].[2] Defendant Arnold did not file a response.

## LEGAL STANDARD

A stay pending appeal is a form of "extraordinary relief" for which the movant bears a "heavy burden." *Castañon-Nava v. U.S. Dep't of Homeland Security*, 161 F.4th 1048, 1055 (7th Cir. 2025) (quoting *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023)). When determining whether to grant a motion for stay pending appeal, the Court considers the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors 'are the most critical.'" *Id.* (quoting *Holder*, 556 U.S. at 434).

## DISCUSSION

### I.    Likelihood of Success on the Merits

---

[2] Plaintiff also filed an emergency motion to stay with the Seventh Circuit on January 9, 2026, raising substantively the same arguments as in his motion before this Court. The Seventh Circuit denied that motion without prejudice to renewal on January 14, 2026, pending this Court's decision.

A-18

In addressing the first of the *Holder* factors, Plaintiff centers his argument on the basis that the Court lacked the jurisdictional capacity to enter its Opinion and Order [DE 29]. First, Plaintiff asserts there was no live controversy at play [DE 31 at 3]. Second, Plaintiff argues this Court lacked jurisdiction under the Eleventh Amendment and *Ex Parte Young*, 209 U.S. 123 (1908) [*Id.*]. Finally, Plaintiff contends the Court improperly exceeded its civil authority by imposing criminal law obligations and contradicting a prior ruling [*Id.* at 4]. The Court will touch on each argument.

### A. Article III Justiciability

To begin with Plaintiff's first argument, Plaintiff is essentially raising a justiciability challenge under Article III of the United States Constitution. "Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary to 'the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threated injury to persons caused by private or official violation of the law.'" *Ezell v. City of Chi.*, 651 F.3d 684, 694–95 (7th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)); *see also* U.S. CONST. art III, § 2.

In this specific scenario, Plaintiff initiated a declaratory judgment action. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting 28 U.S.C. § 2201(a) (alteration in original)). The United States Supreme Court upheld the constitutionality of the Declaratory Judgment Act in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), explaining that the "case of actual controversy" requirement under the Act refers to the type of "Cases" and "Controversies" that

are justiciable under Article III. *See MedImmune*, 549 U.S. at 127 (citing *id.* at 240). Further, the Court explained in *Aetna* and its progeny that for a declaratory action to meet this threshold "controversy" requirement, the underlying dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and moreover, be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Aetna*, 300 U.S. at 240–41); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

Here, Plaintiff's initiation of this action was grounded on seeking a declaration that he was not a sex offender, should not have to register as a sex offender in Indiana, and should be removed from Indiana's Sex Offender Registry by the Department of Corrections—all despite his conviction for a qualifying sex offense under SORNA requiring his registration as a sex offender in Indiana. Plaintiff contends that despite seeking this declaration, a live controversy did not exist because there was no enforcement action against him, and furthermore, any communications from state officials only confirmed the matter was "unresolved" and "pending litigation." [DE 31 at 3]. On this basis, Plaintiff also asserts that any risk was "speculative and contingent on the district court's own ruling," thereby rendering any alleged controversy as merely hypothetical and court created. [*Id.*].

Plaintiff, however, was required to register as a sex offender following his release from custody in 2020, and although a mandatory condition requiring as much was removed from the

5

terms of his supervised release, the question of whether he must nonetheless remain compliant with SORNA persisted. It was this very point which prompted Plaintiff—*upon his own terms and intent*—to seek out a declaration to the contrary. Plaintiff recognized that despite the removal of the registration condition from his supervised release, compliance with SORNA, or the lack thereof, could prompt the threat of government action should he fail to register as SORNA requires.[3]

The Supreme Court in *MedImmune* highlighted that, "where threated action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat," further explaining that "[t]he Plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *MedImmune*, 549 U.S. at 128–29. Plaintiff created a live controversy when he sought a declaration of his rights so as to avoid any potential threat of enforcement for noncompliance. Based on the reasoning provided for in *MedImmune*, it is unclear why Plaintiff's situation would serve as an exception. The Court is therefore unconvinced that it lacked justiciability on this basis.

### B. Eleventh Amendment Sovereign Immunity

---

[3] Plaintiff further asserts that the voluntary cessation doctrine does not preserve the justiciability of this matter. Plaintiff, however, appears to be reading the voluntary cessation doctrine in reverse. Under this doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). A conflict will not be mooted by a party's voluntary cessation unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The burden of proving that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *See N. Tex. Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 899 (N.D. Ill. 2024) (citing *id.*). Here, Plaintiff has not only failed to assert any proof of cessation concerning the enforcement of his registration requirements, but it should be noted once more that Plaintiff himself initiated this declaratory judgment action specifically *because of* the continuing possibility of enforcement regarding his registration as a sex offender in Indiana.

Moving to Plaintiff's second argument, he contends the Court lacked subject matter jurisdiction under the Eleventh Amendment because his alleged injury is not redressable against Defendant Arnold. Plaintiff further asserts that the *Ex Parte Young* exception does not apply where a state official has no enforcement connection to the challenged federal statute, arguing the State of Indiana is the real, substantial party in interest. [*Id.*].

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (quoting U.S. CONST. amend. XI). Although not explicitly stated in its text, courts have construed the Eleventh Amendment broadly to confer "the sovereign immunity that the States possess before entering the Union." *See id.* (quoting *College Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999)). Thus, when properly raised, the Eleventh Amendment bars "actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Id.* (quoting *Ind. Prot. & Advocacy Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010)). But even where it is properly raised, the Eleventh Amendment does not confer absolute immunity from suit. *See id.* at 882. Where, as relevant here, a state official is sued in their official capacity for prospective injunctive or declaratory relief, a suit may proceed under the exception established in *Ex Parte Young*, 209 U.S. 123. Here, Plaintiff seeks just that: injunctive or prospective relief against Defendant

Arnold in his official capacity as Commissioner of the Indiana Department of Corrections. Thus, it is unclear how the Court lacked jurisdiction on this basis.[4]

### C. Exceeding Civil Authority

Finally, Plaintiff argues that the Court exceeded its civil jurisdiction by imposing an affirmative federal registration obligation enforceable by criminal penalties. [DE 31 at 4]. Plaintiff further argues that the Court's Opinion and Order conflicts with the prior ruling in his underlying criminal matter modifying the conditions of his supervised release. There are two issues with Plaintiff's argument, however. First, as Plaintiff acknowledges, this is a civil declaratory judgment proceeding in which Plaintiff asked the Court to determine his rights with regard to SORNA. The Court did specifically as Plaintiff requested. Second, and relatedly, the subject of this declaratory judgment action was whether SORNA applied to Plaintiff, a question that was explicitly left unanswered in the underlying criminal matter. Third, and finally, the Court did not alter the terms of Plaintiff's supervised release—a task best left to the request of Probation or the Government. Instead, the Court merely interpreted whether SORNA was applicable—the question specifically posited to the Court by Plaintiff. And because Plaintiff was presumably required to comply with SORNA and register as a sex offender even before the Court determined as much, it is unclear how the Court stepped outside the box of its civil jurisdiction.

---

[4] Plaintiff further attempts to assert that his alleged injury was not redressable by an order against Defendant Arnold, arguing that Defendant Arnold lacks the relevant enforcement authority over his sex offender registration. [DE 31 at 3]. But this argument was never raised at any prior point in the proceedings. And notwithstanding this waiver, it was Defendant—by counsel, and not the Court, who chose to sue Defendant Arnold. Should Plaintiff have wanted the Court to entertain this argument, the argument should have been timely raised on the merits.

Accordingly, Plaintiff's jurisdictional arguments fail. And because no other arguments supporting a likelihood of success on the merits were presented to the Court, this factor weighs against granting a stay.

## II.    Irreparable Harm

Proceeding to the second *Holder* factor, Plaintiff argues that "[a]bsent a stay, [Plaintiff] faces immediate and irreparable harm" because the Court's Order and Opinion imposes "immediate exposure to criminal liability, arrest, prosecution, and incarceration[.]" [DE 31 at 4]. But this argument is unpersuasive. Plaintiff was already required to register as a sex offender following his release from custody in 2020, and was further aware that he may still be required to register under SORNA even with the modification to his supervised release, hence the initiation of this action. As explained above, no prior ruling in the underlying criminal matter deemed Plaintiff exempt from SORNA, and although Plaintiff had the opportunity to request such a declaration, Plaintiff explicitly narrowed his request for relief to a modification of the terms in his supervised release. Therefore, with all of this in mind, the Court has not changed the status quo. Plaintiff was, and still is, required to comply with whatever registration requirements are outlined under SORNA. This factor, too, weighs against the grant of a stay.

## III.    Balance of Equities and Public Interest

Plaintiff's remaining arguments on the third and fourth *Holder* factors essentially reiterate the points previously addressed in the prior two factors; most pertinently, the Court's jurisdiction and the threat of criminal enforcement. Plaintiff does not touch on the impact to Defendant should the stay be granted. Furthermore, Plaintiff's argument that the public interest is served by "preserv[ing] orderly review and prevent[ing] the premature enforcement of a potentially void judgment" is overly broad and appears to undermine any decision that could

9

potentially be rendered against the movant's favor. Even if this were not the case, these factors seem neutral at best and otherwise do not trump the previous two factors, which are "the most critical" for purposes of the stay analysis. *See Castañon-Nava*, 161 F.4th at 1055 (quoting *Holder*, 556 U.S. at 426).

## CONCLUSION

For the reasons explained above, Plaintiff's Emergency Motion to Stay the Court's Order Pending Appeal [DE 31] is **DENIED**. Because Plaintiff has initiated his appeal in this matter, any further relief must come from the Seventh Circuit Court of Appeals.

SO ORDERED.

ENTERED: January 30, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

10

A-25

# APPENDIX DOCUMENT 3

Emergency Motion for Stay Pending Appeal
January 5, 2026

**FILED**

**JAN 0 5 2026**

At _____

Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF INDIANA

# HAMMOND DIVISION

**MONTELL WILLIAMS,**

Plaintiff–Appellant,

v.

**LLOYD ARNOLD,**

Defendant–Appellee.

**Case No. 2:25-cv-00108-GSL-APR**

## EMERGENCY MOTION FOR STAY PENDING APPEAL

Plaintiff–Appellant Montell Williams, proceeding *pro se*, respectfully moves this Court for an Emergency Stay Pending Appeal of the Court's December 15, 2025 Opinion and Order, pending review by the United States Court of Appeals for the Seventh Circuit. In support, Appellant states as follows:

## I. BACKGROUND

This civil action originated as a state-court declaratory judgment proceeding and was subsequently removed to federal court. At the time of filing, no state or federal authority had an operative order or enforcement action requiring Appellant to register as a sex offender.

Crucially, in a prior, separate proceeding (Cause No. 2:12-cr-144), a federal district court judge had already granted Appellant's motion and removed the condition that he comply with SORNA's registration requirements as part of his supervised release.

1.

A-26

While the present civil matter was pending, the status quo remained: Appellant was not subject to prosecution, no enforcement action was initiated, and no publication of Appellant's information occurred. An informal text communication received three days before judgment confirmed that any potential registration official's belief was expressly "pending litigation" and that information would not be published because the matter was "unresolved."

Despite the absence of any enforced obligation or imminent enforcement action, the district court, on December 15, 2025, granted Defendant's Rule 12(c) motion and ordered Appellant to comply with SORNA, thereby imposing an immediate obligation carrying severe criminal consequences.

Appellant has timely filed a Notice of Appeal challenging the district court's Article III jurisdiction, Eleventh Amendment authority, and power to enter the challenged order.

## II. LEGAL STANDARD

A stay pending appeal is an exercise of judicial discretion designed to preserve the status quo while an appellate court reviews the legality of the challenged order. The Supreme Court explained that a stay is warranted where the movant demonstrates (1) a likelihood of success on the merits, (2) irreparable injury absent a stay, (3) that the balance of equities tips in the movant's favor, and (4) that a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

Where an appeal presents serious threshold questions concerning constitutional jurisdiction and the court's authority to act at all, courts routinely grant a stay. In such circumstances, maintaining the status quo is necessary to protect the integrity of appellate review and prevent the enforcement of an order that may ultimately be declared void *ab initio*.

## III. ARGUMENT

A. Appellant Has a Strong Likelihood of Success on Threshold Jurisdictional Grounds

2.

A-27

Article III of the Constitution limits federal courts to actual, ongoing cases or controversies. At no point—at filing, during litigation, or at judgment—did a live controversy exist.

The voluntary-cessation doctrine, which sometimes preserves jurisdiction, does not apply here because it requires a defendant to have affirmatively halted *ongoing* enforcement.

See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). In this case, there was no enforcement to cease.

The only communication from state officials confirmed the matter was "unresolved" and "pending litigation." This asserted risk was speculative and contingent on the district court's own ruling. Because the alleged injury "exists only if the court acts first," the controversy was hypothetical, not moot. The district court did not merely prevent the resumption of prior conduct; instead, it created the obligation it purported to adjudicate, issuing an impermissible advisory opinion. Article III jurisdiction was lacking at the time judgment was entered.

### 2. The Court Lacked Jurisdiction Under the Eleventh Amendment and *Ex parte Young*

The district court lacked subject matter jurisdiction under the Eleventh Amendment. Appellant's alleged injury is not redressable by an order against this specific defendant. The Commissioner of the IDOC (Lloyd Arnold) has no actual authority under Indiana law to enforce the federal SORNA requirements against an individual not under IDOC custody or supervision; the local county sheriff holds that authority.

The *Ex parte Young* exception does not apply where the state official has no enforcement connection to the challenged federal statute. An order against Commissioner Arnold cannot effectively stop the local sheriff from initiating action. The State of Indiana is the real, substantial party in interest, and the district court was barred by sovereign immunity from adjudicating this dispute or issuing the compliance order against this defendant.

3.

A-28

### 3. The Court Exceeded Its Civil Authority and Contradicted a Prior Ruling

This action was a civil declaratory judgment proceeding. The order imposed an affirmative federal registration obligation enforceable by criminal penalties, despite the absence of statutory authorization or proper civil jurisdiction.

Furthermore, this order conflicts with a previous federal court ruling in Appellant's underlying criminal case (2:12-cr-144) that explicitly removed the SORNA compliance condition. The current order bypasses the procedural requirements for imposing criminal-law obligations and creates contradictory federal judgments.

### B. Appellant Will Suffer Irreparable Harm Absent a Stay

Absent a stay, Appellant faces immediate and irreparable harm. The Order imposes a mandatory obligation carrying severe criminal penalties (up to 10 years imprisonment for non-compliance under 18 U.S.C. § 2250). The immediate exposure to criminal liability, arrest, prosecution, and incarceration implicates fundamental liberty interests that cannot be undone through post-appeal relief. Compelled compliance with a potentially unlawful criminal regime constitutes a recognized irreparable injury.

### C. The Balance of Equities and Public Interest Favor a Stay

The equities weigh decisively in Appellant's favor. Appellant faces immediate, severe consequences from enforcement of an order subject to serious jurisdictional and constitutional doubt. The public interest is best served by ensuring federal courts operate within constitutional limits and by preserving the integrity of the appellate process. A stay preserves orderly review and prevents the premature enforcement of a potentially void judgment.

4.

A-29

## IV. RELIEF REQUESTED

For the foregoing reasons, Appellant respectfully requests that the Court stay enforcement of the December 15, 2025 Opinion and Order pending appeal, preserve the status quo until jurisdictional review by the United States Court of Appeals for the Seventh Circuit is complete, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
Date: January 5, 2026
Montell Williams
Plaintiff–Appellant, *pro se*
6626 Nebraska Ave., Apt. 2A
Hammond, Indiana 46323
Phone: 219-214-1619

## CERTIFICATE OF SERVICE

I certify that on January 5, 2026, a copy of this Emergency Motion for Stay Pending Appeal was served on all counsel of record by regular mail, postage prepaid, addressed to their last known addresses of record.

Montell Williams

*Montell Williams "Pro Se"*

5.

A-30

# APPENDIX DOCUMENT 4

Complaint for Declaratory Judgment

Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

STATE OF INDIANA ) IN THE LAKE COUNTY _____ COURT
                 ) SS:
COUNTY OF LAKE   ) CAUSE NO.:

MONTEL WILLIAMS )
   Plaintiff )
    )
Vs. )
    )
LLOYD ARNOLD, in his official )
Capacity as Commissioner of Indiana )
Department of corrections. )
   Defendant. )

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, Montel Williams, by Counsel Russell W. Brown, Jr. of The Region

Lawyers, Inc., pursuant to Indiana Code § 34-14-1-1 *et seq.* files this Complaint for Declaratory

Judgment against Lloyd Arnold, in his official capacity as Commissioner of Indiana Department

of Corrections and in support thereof complains as follows:

**PARTIES**

1. Plaintiff, Montel Williams is an adult resident of the County of Lake, State of Indiana.

2. Defendant Lloyd Arnold is the Commissioner of the Indiana Department of

   Corrections.

**BACKGROUND**

3. On January 9, 2013, Mr. Williams plead to Count 3, a violation of 18 U.S.C. § 2421,

   Transporting an Individual in Interstate Commerce with Intent to Engage in

   Prostitution in the Northern District of Indiana under Cause Number 2:12-CR-144.

   (Plea Agreement Attached Hereto as Exhibit "A").

A-31

4. On July 19, 2013, Mr. Williams was sentenced to the statutory maximum of 120 months in the Federal Bureau of Prisons with eight (8) years of supervised release upon release from custody. (Sentencing Order Attached Hereto as Exhibit "B").

5. Mr. Williams appealed two of his conditions of supervised release which the 7th Circuit Court of Appeals remanded to the district court for reconsideration of the challenged conditions. (Order Attached Hereto as Exhibit "C").

6. On August 30, 2016, Mr. Williams was resentenced to the maximum of 120 months in the Federal Bureau of Prisons; however, this time he was sentenced to a lifetime supervised release. (Sentencing Order attached Hereto as Exhibit "D").

7. As a mandatory condition of supervised release, the district court ordered for him to comply with the requirements of Sex Offender Registration and Notification Act "SORNA" (42 U.S.C. § 16911, et. seq.) (Exhibit "D").

8. Mr. Williams was released from custody in June 2020.

9. Upon his release, Mr. Williams was ordered to register as a sex offender in Indiana pursuant to the condition of his supervised release.

10. Mr. Williams filed a Motion to Modify the duration and conditions of his supervised release.

11. On August 30, 2024, the district court removed the condition that he be required to comply with SORNA. (Order attached hereto as Exhibit "E").

12. Without the specific supervised release condition that Mr. Williams comply with SORNA, SORNA does not apply to his case.

13. 34 U.S.C. § 20911(5)(A) states in pertinent part: "Generally except as limited by subparagraph (B) or (C), the term 'sex offense' means…" Subparagraph (C) states:

A-32

"An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim."

14. The Department of Justice has an office that is dedicated to SORNA. Said Office is Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART). SMART has a website where they provide up to date information and resources to understand SORNA and when it applies. According to SMART, the Specified Federal Offenses that are sex offenses under SORNA includes 18 U.S.C. § 2421 (Transportation of a Minor for Illegal Sexual Activity).

15. Additionally, SMART addresses the exception under (5)(C) and states: "SORNA does **not** require registration in the following situations: 1) if both participants are adults, and neither is under the custodial authority of the other (e.g., inmate/prison guard) and the conduct was consensual, then this conduct does not constitute a registrable sex offense for purposes of the Adam Walsh Act." (See Attached printout from SMART Attached hereto as Exhibit "F").

16. In the present case, there were no facts that were proven by the Government or admitted to by Mr. Williams that would indicate the sexual conduct was anything but consensual. Additionally, no minors were involved.

17. Mr. Williams was not convicted of a sex offense and does not have any condition of supervised release that he comply with SORNA. Therefore, he should no longer have to register with the State of Indiana.

18. SORNA applies to a violation of 18 U.S.C. § 2421 only if the victim is a minor.

19. The victims involved in all counts of the superseding indictment Mr. Williams faced were not minors.

20. At the time of sentencing, the Federal Probation agreed that SORNA did not apply to Mr. Williams. Said position was based upon independent research done by the probation officer and consulting with the local sex offender registry. (See Addendum to PSR ¶ 5(C) attached hereto as Exhibit "F").

21. Additionally, the Federal Government appeared to concede in its sentencing memorandum that Mr. Williams would not be required to register as a sex offender. (See Sentencing Memorandum PP 3, 15 attached hereto as Exhibit "G").

WHEREFORE, Plaintiff, by Counsel prays that the Court enter declaratory judgment finding that he is not a sex offender, does not have to register as a sex offender in Indiana and further order that the Indiana Department of Corrections remove the Plaintiff from the Sex Offender Registry and for all other just and proper relief.

Respectfully Submitted,

The Region Lawyers, Inc.

By: /s/ Russell W. Brown, Jr.
    Russell W. Brown, Jr. #29628-64
    Attorney for Plaintiff
    9223 Broadway, Suite E
    Merrillville, IN 46410
    219-750-9380

A-34

# APPENDIX DOCUMENT 5

Notice Of Removal

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| MONTEL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| LLOYD ARNOLD, in his official capacity | ) | |
| as Commissioner of the Indiana | ) | |
| Department of Correction, | ) | |
| | ) | |
| Defendant. | ) | |

## Notice of Removal

Defendant, Lloyd Arnold in his official capacity as Commissioner of the Indiana

Department of Correction, by counsel, Thomas Pratt, Deputy Attorney General, pursuant to 28

U.S.C. §§ 1441 and 1446, respectfully notifies the Court of the removal of this action from the

Lake Superior Court to the United States District Court for the Northern District of Indiana,

Hammond Division. In support, the Defendant states as follows:

1. Plaintiff filed his complaint in the Lake Superior Court on February 6, 2025,

under cause no. 45D10-2502-MI-000059.

2. The complaint alleges that Plaintiff is entitled to a declaratory judgment under

Ind. Code § 34-14-1-1 based on an interpretation of federal law.

3. The notice of removal is timely, having been filed within 30 days of service of the

complaint and summons, in accordance with 28 U.S.C. § 1446(b).

4. In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants properly joined and

served consent to removal of this action, as the Lloyd Arnold is the only defendant.

A-35

5.      Filed simultaneously with this notice of removal are all pleadings and processes of the Lake Superior Court that have been served upon the defendant in this action. A copy of the Lake Superior Court's electronic chronological case summary is also being filed simultaneously. (Exhibit A: Chronological Case Summary in Cause No. 45D10-2502-MI-000059 and Pleadings, and Processes).

6.      Plaintiff brings this action seeking a declaratory judgment. This Court is authorized to enter declaratory judgments pursuant to 28 U.S.C. § 2201.

7.      According to the complaint, Plaintiff pleaded guilty to transporting an individual in interstate commerce with intent to engage in prostitution, in violation of 18 U.S.C. § 2421 ("transporting/prostitution"), in the United States District Court for the Northern District of Indiana, under case no. 2:12-cr-00144. (Compl. at ¶ 3.) Transporting/prostitution is a "sex offense" under the Sex Offender Registration and Notification Act ("SORNA"). *See* 34 U.S.C. § 20911(5)(A)(iii).

8.      Plaintiff seeks an order declaring that he does not have an obligation to register as a sex offender on the Indiana Sex and Violent Offender Registry ("SVOR") because his offense of transporting/prostitution is not a "sex offense" within the meaning of 34 U.S.C. § 20911(5)(C). Plaintiff alleges that, because his offense is not a registerable sex offense, the SORNA does not require that he register as a sex offender in Indiana. *See id.* at § 20913(a) (requiring sex offenders to "keep the[ir] registration current" in each jurisdiction in which they reside, work, or are a student, as well as the jurisdiction in which they were convicted).

9.      This case may be removed because this action falls within the original jurisdiction of this Court, as Plaintiff's registration obligation as a sex offender stems from, and is predicated on the interpretation of, SORNA—a claim arising under the Constitution, treaties, or

laws of the United States. *See* 28 U.S.C. §§ 1331, 1441(a). *Cf. Grable & Sons Metal Prods.*, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (finding federal question jurisdiction where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

10.     Venue is proper in this Court, because the United States District Court for the Northern District of Indiana is the district for the geographical area encompassing Lake County, Indiana, where the state court actions was filed. *See* 28 U.S.C. § 1441(a).

11.     A copy of this Notice will be served upon all other parties and filed with the Lake Superior Court upon receipt of a file stamped copy pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, the Defendant respectfully submits this notice of removal from the Lake Superior Court to the United States District Court for the Northern District of Indiana, Hammond Division, and pray this Honorable Court exercise jurisdiction over this case, and that the action be removed to this Court and Division.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL
Attorney No. 18857-49

Date:   March 5, 2025              By:              */s/ Thomas S. Pratt*
Thomas S. Pratt
Deputy Attorney General
Attorney No. 36933-18
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-0493
Fax: (317) 232-7979
Email: Thomas.Pratt@atg.in.gov

A-37

## Certificate of Service

I hereby certify that on March 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also certify that on March 5, 2025, the foregoing was mailed via the United States Postal Service, first-class postage prepaid return receipt requested to the following:

Russell W. Brown, Jr.
9223 Broadway, Suite E
Merrillville, Indiana 46410

Date: March 5, 2025

/s/ *Thomas Pratt*

Thomas S. Pratt
Deputy Attorney General

A-38

# APPENDIX DOCUMENT 6

Sentencing Modification Order
August 30, 2024

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12 CR 144 |
| | ) | |
| MONTELL WILLIAMS | ) | |

## OPINION and ORDER

This matter is before the court on defendant Montell Williams's motion to modify the duration and conditions of his term of supervised release. (DE # 142.) For the reasons set forth below, the motion is granted, in part, and denied, in part.

## I.      BACKGROUND

In 2013, defendant pleaded guilty to transporting an individual in interstate commerce with intent to engage in prostitution in violation of the Mann Act, 18 U.S.C. § 2421. (DE ## 20, 43.) The Honorable Judge Rudy Lozano sentenced defendant to the statutory maximum term of 120 months imprisonment, plus eight years supervised release. (DE # 64.) As a condition of supervised release, Judge Lozano required that defendant comply with the requirements of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911, *et seq. (Id.)*

On appeal, the Seventh Circuit remanded for further explanation regarding two conditions of supervision unrelated to the SORNA issue. (DE # 81.) At resentencing, Judge Lozano sentenced defendant to 120 months imprisonment, plus a lifetime term of supervised release. (DE ## 120, 128.) The condition related to SORNA was again imposed. *(Id.)*

A-39

Defendant completed his term of incarceration, and has served approximately three-and-a-half years of his term of supervised release without any violations. (*See* DE # 148 at 1.) He now asks the court to: (1) strike the supervised release condition requiring compliance with SORNA; and (2) reduce his term of supervision from lifetime to five years. (DE # 142.)

## II.　LEGAL STANDARD

A court may modify the conditions of supervised release at any time prior to the expiration of the term, after consideration of relevant Section 3553(a) factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence, and the interests of protecting the public. 18 U.S.C. § 3583(e). A hearing is not required on the present motion because the modifications sought are favorable to the defendant and do not extend the term of supervised release. Fed. R. Crim. P. 32.1(c).

## III.　DISCUSSION

SORNA is a federal statute which was originally enacted to "protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. It "establishes a comprehensive national system for the registration of those offenders," and requires offenders to register in each jurisdiction (generally, a state such as Indiana) where he or she resides, works, or is a student. *Id.* § 20913. It is a federal crime to fail to register as a sex offender, 18 U.S.C. § 2250, but defendant has not been charged with that crime in this case.

A-40

When defendant first moved for the court to strike the SORNA condition, he based his request on the premise that SORNA does not apply to him. (DE # 142.) Specifically, defendant pointed out that SORNA contains a consensual sexual conduct exception to its definition of "sex offender." (*Id.*) However, defendant has clarified that he does not seek a determination of whether SORNA's requirements apply to him. (DE # 156 at 3-4.) Rather, defendant simply asks the court to strike the requirement of compliance with SORNA from the list of conditions related to his lifetime term of supervised release. (*Id.*)

The issue of SORNA has been raised in this case on various occasions. Historically, the position of both the Government and the Probation Department was that defendant would not be required to register as a sex offender as a result of his conviction in this case.[1] (*See, e.g.*, DE # 111 at 6; DE # 118 at 3, 15.) Oddly, however, defendant's plea agreement lists compliance with SORNA as a condition of supervised release. (DE # 40 at 5.) The SORNA condition was imposed during defendant's original sentencing (Sent. Tr. at 25), and defendant did not challenge the issue on appeal.

During the resentencing hearing, defense counsel Micheal Bosch argued that there was no legal basis for a SORNA condition, and directed the court's attention to the Probation Department's statement on the matter, which appeared in the Addendum

---

[1] The Government and Probation Department have since changed course and argue that defendant *is* likely subject to the requirements of SORNA. (*See, e.g.*, DE ## 148, 149.) Regardless, as explained herein, the court need not make this determination today.

to the Presentence Report. (Resent. Tr. at 11.) In that Addendum, Probation Officer

David Beier stated:

> Probation does not believe the defendant is required to register under SORNA. This opinion is based on my review of SORNA and discussions with personnel from the Lake County Sex Offender Registry. Prior to the original sentencing in 2013, Probation was of the same opinion.

(DE # 111 at 6.) The Government, represented by Assistant United States Attorney Jill

Koster, responded to Bosch's argument with the following:

> Judge, I think legally, based on my review of the case law and the statutes, that that is true based on his count of conviction. The Defendant did agree to register as a sex offender in his plea, and I think that sex offender registration is clearly appropriate in this case given his criminal conduct; but unfortunately, I don't think the law provides a clear mechanism to hold him accountable under SORNA. So in lieu of him being required to register as a sex offender, the Government is arguing that he should receive a lifetime term of supervised release following his release from incarceration because he is clearly a dangerous individual and poses a significant risk of danger to, in particular, young women.

(Resent. Tr. at 11-12.)

Judge Lozano then stated that he had been in contact with the Indiana

Department of Corrections Sex and Violent Offender Registration Department. (*Id.*) The

Department, Judge Lozano said, indicated that defendant *would be* required register as a

sex offender upon release. (*Id.* at 12.) Counsel for the Government stated that "my legal

research and Probation's legal research netted a different conclusion [than the

Department's]," and urged the court not to impose the condition: "[T]he Government

persists in asking the Court to impose a lifetime term of supervised release. . . .

4

[A]lthough the court has one opinion, it is not crystal clear that he is going to be legally required to register as a sex offender." (*Id.* at 15.)

Judge Lozano did not ultimately conclude that defendant was (or was not) subject to the requirements of SORNA. However, he did impose the SORNA condition tentatively and with the understanding that the matter would be revisited after defendant's release. Specifically, Judge Lozano stated: "The court is going to order that he register; however, at the time of his release, the [Indiana] Registry may make a final decision as to whether Defendant is required to register on the indictment, judgment, or committal order, other relevant conduct. In other words, right now I'm basing it on what they told me. That's liable to change at any time." (Resent. Tr. at 12.)

Judge Lozano was fully aware of the lack of clarity around the issue of SORNA in this case, hence the provisional ruling. As the undersigned reviews the matter today, it must acknowledge that the current record does not contain evidence that non-consensual sex occurred in connection with defendant's criminal conduct, as defendant points out. Thus, the court would be inclined to find that defendant is not subject to the requirements of SORNA, as was advocated by all parties involved – the defendant, the Government, and the Probation Department– during resentencing. The court need not issue such a ruling, however, because defendant is not requesting it. (DE # 156 at 3-4.)

Nonetheless, the court finds that striking the SORNA condition in this case and at this time is appropriate, because to impose it would be a greater deprivation of liberty than is reasonably necessary to achieve the goal of deterrence, incapacitation,

5

and rehabilitation. *See United States v. Cruz-Rivera,* 74 F.4th 503, 510 (7th Cir. 2023); 18 U.S.C. § 3583(d)(2). As the court explains in more detail below, a lifetime term of supervised release will continue to apply to defendant for the time being. This lifetime term requires that, amongst other things, defendant comply with various reporting and visitation requirements, maintain lawful employment, submit to drug testing, and participate in programming related to the issues of mental health and domestic violence. (DE # 120.) A lifetime term of supervision with such conditions adequately promotes the goals of deterrence, incapacitation, and rehabilitation. Removing the tether linking the legally-murky issue of SORNA registration to defendant's term of supervised release is appropriate in light of the extraordinary length of supervision and the remaining conditions.

It is important to note that the court's decision to eliminate SORNA compliance as a condition of defendant's supervised release does not effect the independent operation of the SORNA statute itself. SORNA still requires a sex offender to register as such, and a sex offender may still be prosecuted for failure to register under 18 U.S.C. § 2250, whether or not a court has imposed registration as a condition of supervision. A conviction under this statute carries a possible penalty of ten years imprisonment. *Id.* The court strongly urges defendant to consider these facts if the relevant State authorities have informed defendant (or inform him in the future) that he is subject to registration in a jurisdiction.

As the court already briefly noted, defendant's request to reduce his lifetime term of supervision to five years is denied. The court has considered defendant's argument that he has completed three-and-a-half years of supervision without incident. This is a commendable achievement. The court is also aware of the fact that defendant's criminal activity did not involve children. However, the court has a responsibility to protect adult members of society as well (including, in this case, young women), from individuals with a proven track record of abuse and trafficking for their own gain. The court is also cognizant of defendant's relatively young age (44) and his crime of conviction (human trafficking with intent to engage in prostitution), and how easily defendant could fall back into a lifestyle involving the same crimes. As Judge Lozano articulated when he imposed the lifetime term of supervision during resentencing, "it's easy money . . . she does all the work and you get all the money, that's easy to become habit forming." (Resent. Tr. at 49.) Though further progress and law-abiding behavior may change the court's assessment in the future, the nature of defendant's crime of conviction and the risk of defendant's recidivism is too great at this time to justify any reduction in the duration of supervision.

## IV.     CONCLUSION

For the foregoing reasons, defendant's motion to modify the duration and conditions of supervised release (DE # 142) is **GRANTED, in part, and DENIED, in part.** The court **STRIKES** the condition of supervision related to compliance with the requirements of the Sex Offender Registration and Notification Act, but defendant

7

remains on a lifetime term of supervised release. Defendant's related motion to supplement the record is **GRANTED** (DE # 156), and the motion for hearing is **DENIED** (DE # 151).

**SO ORDERED.**

Date: August 30, 2024

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

# APPENDIX DOCUMENT 7

Defendant's Answer, Affirmative Defenses,
and Demand for Jury

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MONTEL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-00108-GSL-APR |
| | ) | |
| LLOYD ARNOLD, in his official capacity | ) | |
| as Commissioner of the Indiana | ) | |
| Department of Correction, | ) | |
| | ) | |
| Defendant. | ) | |

### Answer, Affirmative Defenses, and Demand for Jury

Defendant, Lloyd Arnold in his official capacity as Commissioner of the Indiana

Department of Correction, by counsel, Thomas S. Pratt, for an answer to Plaintiff's complaint

(ECF 4) submit the following:

### Answer

Defendants answer as follows:

### *Parties*

1.    Plaintiff, Montel Williams is an adult resident of the County of Lake, State of

Indiana.

**Answer to 1.**  Defendant admits.

2.    Defendant Lloyd Arnold is the Commissioner of the Indiana Department of

Corrections.

**Answer to 2.**  Defendant admits.

### *Background*

A-47

3.    On January 9, 2013, Mr. Williams plead to Count 3, a violation of 18 U.S.C. § 2421, Transporting an Individual in Interstate Commerce with Intent to Engage in Prostitution in the Northern District of Indiana under Cause Number 2:12-CR-144. (Plea Agreement Attached Hereto as Exhibit "A").

**Answer to 3.** Defendant admits.

4.    On July 19, 2013, Mr. Williams was sentenced to the statutory maximum of 120 months in the Federal Bureau of Prisons with eight (8) years of supervised release upon release from custody. (Sentencing Order Attached Hereto as Exhibit "B").

**Answer to 4.** Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

5.    Mr. Williams appealed two of his conditions of supervised release which the 7th Circuit Court of Appeals remanded to the district court for reconsideration of the challenged conditions. (Order Attached Hereto as Exhibit "C").

**Answer to 5.** Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

6.    On August 30, 2016, Mr. Williams was resentenced to the maximum of 120 months in the Federal Bureau of Prisons; however, this time he was sentenced to a lifetime supervised release. (Sentencing Order attached Hereto as Exhibit "D").

**Answer to 6.** Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

7.    As a mandatory condition of supervised release, the district court ordered for him to comply with the requirements of Sex Offender Registration and Notification Act "SORNA" (42 U.S.C. § 16911, et. seq.) (Exhibit "D").

A-48

**Answer to 7.** Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments

8.    Mr. Williams was released from custody in June 2020.

**Answer to 8.** Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

9.    Upon his release, Mr. Williams was ordered to register as a sex offender in Indiana pursuant to the condition of his supervised release.

**Answer to 9.** Defendant admits only that Plaintiff incurred an obligation to register as a sex offender in Indiana but denies all else as written.

10.    Mr. Williams filed a Motion to Modify the duration and conditions of his supervised release.

**Answer to 10.** Defendant admits.

11.    On August 30, 2024, the district court removed the condition that he be required to comply with SORNA. (Order attached hereto as Exhibit "E").

**Answer to 11.** Defendant admits.

12.    Without the specific supervised release condition that Mr. Williams comply with SORNA, SORNA does not apply to his case.

**Answer to 12.** Defendant admits.

13.    34 U.S.C. § 20911(5)(A) states in pertinent part: "Generally except as limited by subparagraph (B) or (C), the term 'sex offense' means... " Subparagraph (C) states: "An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim."

A-49

**Answer to 13.** This is not an assertion of fact or an allegation that requires a response. To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief and denies that Plaintiff falls within the exception to a registrable sex offense.

14.     The Department of Justice has an office that is dedicated to SORNA. Said Office is Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART). SMART has a website where they provide up to date information and resources to understand SORNA and when it applies. According to SMART, the Specified Federal Offenses that are sex offenses under SORNA includes 18 U.S.C. § 2421 (Transportation of a Minor for Illegal Sexual Activity).

**Answer to 14.** This is not an assertion of fact or an allegation that requires a response. To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief and denies that Plaintiff falls within the exception to a registrable sex offense.

15.     Additionally, SMART addresses the exception under (5)(C) and states: "SORNA does **not** require registration in the following situations: 1) if both participants are adults, and neither is under the custodial authority of the other (e.g., inmate/prison guard) and the conduct was consensual, then this conduct does not constitute a registrable sex offense for purposes of the Adam Walsh Act." (See Attached printout from SMART Attached hereto as Exhibit "F").

**Answer to 15.**   This is not an assertion of fact or an allegation that requires a response. To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief and denies that Plaintiff falls within the exception to a registrable sex offense.

16.     In the present case, there were no facts that were proven by the Government or admitted to by Mr. Williams that would indicate the sexual conduct was anything but consensual. Additionally, no minors were involved.

A-50

**Answer to 16.**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

17.   Mr. Williams was not convicted of a sex offense and does not have any condition of supervised release that he comply with SORNA. Therefore, he should no longer have to register with the State of Indiana

**Answer to 17.**   Defendant denies.

18.   SORNA applies to a violation of 18 U.S.C. § 2421 only if the victim is a minor.

**Answer to 18.**   Defendant denies.

19.   The victims involved in all counts of the superseding indictment Mr. Williams faced were not minors.

**Answer to 19.**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

20.   At the time of sentencing, the Federal Probation agreed that SORNA did not apply to Mr. Williams. Said position was based upon independent research done by the probation officer and consulting with the local sex offender registry. (See Addendum to PSR ,-i 5(C) attached hereto as Exhibit "F").

**Answer to 20.**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

21.   Additionally, the Federal Government appeared to concede in its sentencing memorandum that Mr. Williams would not be required to register as a sex offender. (See Sentencing Memorandum PP 3, 15 attached hereto as Exhibit "G").

**Answer to 21.**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the averments.

Regarding Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief and he must register as a sex offender in Indiana.

## Affirmative Defenses

1.      Plaintiff has failed to state a claim for which relief can be granted.

2.      Defendants are entitled to their costs, including reasonable attorney fees.

Defendants reserve the right to raise additional defenses or amend their Answer as justice may require.

**WHEREFORE**, Defendant prays that Plaintiff take nothing by way of his Complaint, that judgment be entered in Defendant's favor, and for all other just and proper relief.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Attorney No. 18857-49

Date: May 9, 2025

By:     Thomas S. Pratt
Deputy Attorney General
Attorney No. 36933-18

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone:  (317)232-0493
Facsimile:  (317)232-7979
E-mail:  Thomas.Pratt@atg.in.gov

# APPENDIX DOCUMENT 8

Civil Cover Sheet

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MONTEL WILLIAMS

## DEFENDANTS

LLOYD ARNOLD, in his official capacity as Commissioner of the Indiana Department of Correction,

**(b)** County of Residence of First Listed Plaintiff    Lake
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Marion
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Russell W. Brown, Jr.
Attorney for Plaintiff
9223 Broadway, Suite E
Merrillville, IN 46410

Attorneys *(If Known)*

Theodore E. Rokita, Indiana Attorney General
Thomas S. Pratt, Deputy Attorney General
IGCS-5th Floor; 302 W Washington St.
Indianapolis, IN 46204

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

*(Under FEDERAL TAX SUITS column:)* ☐ 870 Taxes (U.S. Plaintiff or Defendant)   ☐ 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2201; 34 U.S.C. § 20911 et seq.

Brief description of cause:
Plaintiff's registration requirement as a sex offender under the Sex Offender Registration and Notification Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Hon. James T. Moody     DOCKET NUMBER   2:12-cr-00144

DATE
03/05/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

A-53

# APPENDIX DOCUMENT 9

Federal Probation Communication from Peter Sgroi (Dec. 30, 2025)



10:42    ..Il 5G 17

Hello Montell,  As I mentioned yesterday, I looked into the registration issue.
First, I gave you an incorrect number on my prior text for the SO office. It is (219) 755-3321.
I emailed Angie today and told her I gave you a bad number and you were attempting to call her.
Second, I found out that the state case was argued before Hammond Federal  Judge Lund who made an Opinion and Order on December 15, 2025.  I will email you the order from the 15th. The court Ordered, immediately and moving forward, that you comply with SORNA's sex offender registration requirement.
This information was passed along to Lake County SOR office with the Order. Therefore Lake County wants you to register.
I'm not sure why your attorney didn't reveal this to you. Feel free to reach out to him.

Copy

Delete

A-54